UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal No. 07-007 (GK) |
| ) | |
| v. ) | |
| ) | |
| ANDRE DREW ) | |
| _____ ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE & STATEMENTS**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant's Motion to Suppress Evidence and Statements. For the reasons set forth below, the defendant's motion should be denied.

I.   PROCEDURAL BACKGROUND

On January 31, 2007, a federal grand jury indicted the defendant, Andre Drew, on one count of Enticing a Minor in Sexual Conduct for the Purpose of Production, in violation of 18 U.S.C. § 2251(a) (Count One); two counts of First Degree Child Sexual Abuse, in violation of D.C. Code § 22-3008 (Counts Two and Three); and one count of Second Degree Child Sexual Abuse, in violation of D.C. Code § 22-3009 (Count Four). Upon the grand jury indicting the defendant in this Court, the government moved to dismiss without prejudice the pending action in the Superior Court for the District of Columbia.[1]

---

[1] The defendant had been indicted in the Superior Court on February 22, 2006, on fourteen counts of First and Second Degree Child Sexual Abuse (with Aggravating Circumstances) and Use of a Minor in a Sexual Performance, for conduct involving three adolescent boys under the age of 16, including D.B., the victim in this case. Due to one mutually requested continuance and other continuances requested by the defendant or necessitated by his requests for new counsel, the trial in Superior Court did not commence as scheduled. When the last trial date, December 6, 2006, was continued because the defendant requested new counsel on the eve of trial, the government considered removing the case to federal court. Realizing that there were grounds for a federal action,

II.     FACTUAL BACKGROUND

On December 10, 2005, 13-year-old A.B. called 911 and reported that he, and a 12-year-old male friend, D.B., had been abducted at gunpoint in front of Dunbar High School in the District of Columbia. A.B. said that they were taken to 135 P Street, N.W., to a room on the second floor, whose door was the first one on the left. There, he claimed that they were forced to perform oral and anal sex on each other while their abductor took photographs. However, upon further questioning, A.B. admitted that he had not been abducted, but he maintained that a man that he knew for three years, named Andre Thomas Drew, took pictures of him and D.B. engaged in sex in the room located at 135 P Street, N.W. A.B. explained that the defendant offered to pay him and D.B. $500 each if they engaged in sex so that the defendant could take pictures of them. They agreed and about one month earlier (sometime in November 2005), they went to the defendant's room at 135 P Street, N.W., where they engaged in sex while the defendant took pictures. A.B. said that he called the police on December 10, 2005, because the defendant was going to mail the sexually explicit photograph's to A.B.'s mother.

A.B. showed the police the defendant's room and he gave them a physical description of the defendant and the defendant's car. As A.B. was being taken to the police station, A.B. saw the defendant drive by in his car and he pointed the defendant out to an officer. The car was stopped and A.B. identified the defendant -- the sole occupant of the vehicle -- as the person who took the sexually explicit pictures of him and D.B.

The defendant was taken back to 135 P Street, N.W., where he verbally and in writing consented to a search of his room. After he verbally consented to the search, but before he signed

---

the government indicted the case in this Court in less than sixty days.

2

the form, the defendant handed a police officer a brown folder, stating "this is what you are looking for," or words to that effect. The officer, who previously had seen the folder, told the defendant that he should wait until he signed the consent form. The defendant signed the form and the police retrieved the brown folder, which contained photographs of A.B. having anal and oral sex with an adolescent male, later identified as D.B. These photographs had the background cut away from the figures.

During that investigation, the police also realized that A.B. was one of the boys in a set of sexually explicit photographs that a local CVS had given to the police in November 2005, and that the defendant was the man on the surveillance videotape submitting the film for processing and attempting to retrieve the prints. The name printed on the film processing envelope was "Thomas Caclin" and the telephone number listed was 410-320-2158.[2]

The defendant was arrested and transported to the police station. There, he was read his <u>Miranda</u> rights and he signed a waiver of those rights agreeing to speak to the police without an attorney. During that interview, the defendant told the police that he took the pictures that were developed at CVS. He said that about a month before his arrest, he took the pictures of the boys engaging in oral and anal sex inside his room at 135 P Street, N.W. He said that he submitted the film for processing, but the store would not allow him to pick up the prints. The defendant identified the boys in the CVS photographs by their first names, which are consistent with the names of A.B. and D.B.

---

[2] Further investigation revealed that the telephone number listed on the CVS film processing envelope was only one digit off from the defendant's actual telephone number, 410-3<u>7</u>0-2158, which D.B. said he used to contact the defendant.

About five days after the defendant was arrested, the police interviewed 12-year-old D.B. He told the police that he knew "Thomas" for about three years and had sex with him on a number of occasions. D.B. said that sometimes, after they had sex, "Thomas" gave him money. D.B. also said that "Thomas" had sex with A.B. When asked about the CVS pictures, D.B. stated that "Thomas" asked A.B. and D.B. to have sex with each other while he took pictures of them. "Thomas" promised to pay them $500 each for the pictures, but he did not pay them. D.B. also corroborated A.B.'s claim that "Thomas" intended to send the sexually explicit pictures to A.B.'s mother. D.B. said that he saw the card containing the pictures in "Thomas'" car.[3] He also told the police that "Thomas" bought him a dirt bike; helped him to concoct a phoney school fund raising scheme in which D.B. would keep the money;[4] allowed him to play video games; showed him pornography; and gave him marijuana and alcohol to consume. D.B. said that he spent the night with "Thomas" and had sex with him as recently as one month before being interviewed. On December 19, 2005, about four days after the police interviewed D.B., they showed him a single photograph of the defendant. Without hesitation, D.B. stated, "yes, that's him," identifying the defendant as the person that he knew as "Thomas."

III.   ARGUMENT

The defendant seeks to suppress all evidence that was (1) seized in connection with a search of his room located at 135 P Street, N.W., in the District of Columbia; and (2) seized from his car.

---

[3] When the defendant was stopped on December 10, 2005, the sexually explicit card was found in the defendant's car. The pictures in the brown folder that the defendant gave to the police during the consent search of his room, appear to have been used to produce that card.

[4] Copies of the fund raising flyers were recovered from the brown folder that the defendant handed to the police during the consent search of his room.

He also seeks to suppress any statements that he made to the police subsequent to his arrest. See Mot. Suppress at 2. The government will address each category of items seriatim.

    A. <u>Items Seized From The Defendant's Room</u>

Two searches were conducted of the defendant's room on December 10, 2005. The first search occurred after the police responded to A.B.'s 911 call. A.B. showed the police the defendant's room located on the second floor of a rooming house located at 135 P Street, N.W., in the District of Columbia. The door to the room was open and officers saw a photograph of A.B. and another boy, who later was identified as D.B., on the wall beside the defendant's bed. Realizing that A.B. knew his alleged assailant, a police officer picked up a brown folder hoping to find a picture or other information identifying the person A.B. claimed was Andre Thomas Drew. Inside the folder were pictures of A.B. and D.B. engaged in sexual acts, but the boys bodies were cut away from the background of the photographs. The folder also contained lettering that appears to have been used to construct the card that the defendant was going to send to A.B.'s mother. The officer replaced the folder in the room and secured the room while he transported A.B. to the station for further questioning. On the way to the station, A.B. saw the defendant's car and identified him. The defendant was stopped and taken back to the rooming house at 135 P Street, N.W.

At the rooming house, the defendant verbally, and in writing, consented to a search of his room. However, after he gave his verbal consent and before he signed the form, the defendant handed to an officer the same brown folder that had been found earlier, and he said "this is what you are looking for," or words to that effect. The officer waited until the defendant signed the consent form before he accepted the brown folder and completed the search of the defendant's room. In that

5

consent search, the police also recovered copies of the fraudulent flyer scheme that D.B. discussed, the defendant's resume, and other personal papers.

On December 27, 2005, the police obtained a warrant to further search the defendant's room located at 135 P Street, N.W. On January 4, 2006, when they arrived to execute the warrant, the room was empty. Further investigation revealed that the defendant's brother had cleaned out the defendant's room. A subpoena *duces tecum* was issued to the defendant's brother and on January 30, 2006, the defendant's brother provided the government with the items that he removed from the defendant's room at 135 P Street, N.W.

The government will not seek to admit, in its case-in-chief, any of the items that were recovered from the defendant's room during the initial search or the consent search. Specifically, the government will not seek to admit the brown folder, the photographs found therein, the lettering which apparently was used to produce the card, the copies of the flyers, the defendant's resume or the other personal papers that were seized. As to these items, the defendant's motion should be denied as moot.

However, if the defendant also seeks to suppress the items that his brother provided, the motion should be denied as to those items because they were obtained pursuant to lawful process, namely a search warrant and subpoena. Those items include, the dirt bike and paperwork related to its purchase; various notebooks containing, among other things, lists of pornographic web sites; a box of VCR tapes and personal papers; a box containing two video game players and games; the contract and other papers related to the defendant's rental of a storage unit; and a cellular telephone, telephone charger, address/telephone book, and various identification and other cards belonging to the defendant.

B.  Items Recovered From The Defendant's Car

The pornographic card and envelope addressed to A.B.'s home are the only items that the police recovered from the defendant's car.  The government will not seek, in its case-in-chief, to introduce those items.  Accordingly, the defendant's motion as to those items should be denied as moot.

C.  The Defendant's Post-Arrest, Post-Waiver Videotaped Statement to the Police

On December 10, 2005, after the defendant was arrested, he agreed to speak to the police after signing a waiver of his Miranda rights.  During that conversation, which was videotaped, the defendant stated, among other things, that he knew the boys depicted in the photographs.  He identified the boys by names that are consistent with A.B. and D.B.  The defendant also admitted that he had taken the pictures recovered from CVS, that he took them about a month prior to his arrest, and that he took the photographs in his room.

The defendant avers that his post-waiver statement should be suppressed because it was made involuntarily and in violation of his 5th Amendment rights.  See Mot. Suppress at 2.  He cites, Miranda v. Arizona, 384 U.S. 436, 475-479 (1966), in support of his request.

The government disagrees with the asserted legal basis for suppression.  The defendant was read his Miranda rights and voluntarily waived them in writing before making the statement that he now seeks to suppress.  The defendant has not articulated any facts to support his contention that his statement was "involuntary" and the facts as they are known to the government suggest that the statement was made voluntarily.  Specifically, the defendant was seated in a room with a single police officer.  He was not handcuffed.  The officer spoke to the defendant in a moderate conversational tone of voice and no weapons were displayed.

Notwithstanding that the government disagrees with the asserted legal basis for suppression, it will not seek to admit in its case-in-chief the defendant's post-waiver statement. The defendant's motion to suppress that statement is therefore moot and should be denied.

        Respectfully submitted,

        JEFFREY A. TAYLOR
        UNITED STATES ATTORNEY


By: _____
        JULIEANNE HIMELSTEIN
        DENISE A. SIMMONDS
        Assistant United States Attorney
        555 Fourth Street, N.W.
        Washington, DC 20530
        (202) 353-8077

CERTIFICATE OF SERVICE

  I hereby certify that on the _____ day of April, 2007, a copy of the Government's Opposition to Defendant's Motion to Suppress Evidence and Statements was mailed and sent via facsimile to Danny Onorato, Schertler & Onorato, 601 Pennsylvania Avenue, N.W., North Building, 9th Floor, Washington, D.C. 2004, and 202-628-4177.

                _____
                JULIEANNE HIMELSTEIN
                DENISE A. SIMMONDS
                Assistant United States Attorney