UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 07-007 (GK) |
| | : | |
| ANDRE DREW | : | |
|     Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO SEVER AND DISMISS JOINED COUNTS**

The United States Attorney, by and through the United States Attorney for the District of Columbia, respectfully opposes defendant's motion to sever and dismiss Counts Two through Four of the indictment. The defendant's motion should be denied because joinder of these offenses is proper, trial of all of the offenses in a single action will conserve judicial resources, and a joint trial of these matters will not substantially prejudice the defendant.

I.    PROCEDURAL BACKGROUND

On January 31, 2007, a federal grand jury indicted the defendant, Andre Drew, on one count of Enticing a Minor in Sexual Conduct for the Purpose of Production, in violation of 18 U.S.C. § 2251(a) (Count One); two counts of First Degree Child Sexual Abuse, in violation of D.C. Code § 22-3008 (Counts Two and Three); and one count of Second Degree Child Sexual Abuse, in violation of D.C. Code § 22-3009 (Count Four). Upon the grand jury indicting the defendant in this Court, the government moved to dismiss without prejudice the pending action in the Superior Court for the District of Columbia.[1]

---

[1] The defendant had been indicted in the Superior Court on February 22, 2006, on fourteen counts of First and Second Degree Child Sexual Abuse (with Aggravating

1

II.  FACTUAL BACKGROUND

On December 10, 2005, 13-year-old A.B. called 911 and reported that he, and a 12-year-old male friend, D.B., had been abducted at gunpoint in front of Dunbar High School in the District of Columbia. A.B. said that they were taken to 135 P Street, N.W., to a room on the second floor, whose door was the first one on the left. There, he claimed that they were forced to perform oral and anal sex on each other while their abductor took photographs. However, upon further questioning, A.B. admitted that he had not been abducted, but he maintained that a man that he knew for three years, named Andre Thomas Drew, took pictures of him and D.B. engaged in sex in the room located at 135 P Street, N.W. A.B. explained that the defendant offered to pay him and D.B. $500 each if they engaged in sex so that the defendant could take pictures of them. They agreed and about one month earlier (sometime in November 2005), they went to the defendant's room at 135 P Street, N.W., where they engaged in sex while the defendant took pictures. A.B. said that he called the police on December 10, 2005, because the defendant was going to mail the sexually explicit photograph's to A.B.'s mother.

A.B. showed the police the defendant's room and he gave them a physical description of the defendant and the defendant's car. As A.B. was being taken to the police station, A.B. saw the defendant drive by in his car and he pointed the defendant out to an officer. The car was stopped and A.B. identified the defendant -- the sole

---

Circumstances) and Use of a Minor in a Sexual Performance, for conduct involving three adolescent boys under the age of 16, including D.B., the victim in this case. Due to one mutually requested continuance and other continuances requested by the defendant or necessitated by his requests for new counsel, the trial in Superior Court did not commence as scheduled. When the last trial date, December 6, 2006, was continued because the defendant requested new counsel on the eve of trial, the government considered removing the case to federal court. Realizing that there were grounds for a federal action, the government indicted the case in this Court in less than sixty days.

occupant of the vehicle -- as the person who took the sexually explicit pictures of him and D.B.

The defendant was taken back to 135 P Street, N.W., where he verbally and in writing consented to a search of his room. After he verbally consented to the search, but before he signed the form, the defendant handed a police officer a brown folder, stating "this is what you are looking for," or words to that effect. The officer, who previously had seen the folder, told the defendant that he should wait until he signed the consent form. The defendant signed the form and the police retrieved the brown folder, which contained photographs of A.B. having anal and oral sex with an adolescent male, later identified as D.B. These photographs had the background cut away from the figures.

During that investigation, the police also realized that A.B. was one of the boys in a set of sexually explicit photographs that a local CVS had given to the police in November 2005, and that the defendant was the man on the surveillance videotape submitting the film for processing and attempting to retrieve the prints. The name printed on the film processing envelope was "Thomas Caclin" and the telephone number listed was 410-320-2158.[2]

The defendant was arrested and transported to the police station. There, he was read his Miranda rights and he signed a waiver of those rights agreeing to speak to the police without an attorney. During that interview, the defendant told the police that he took the pictures that were developed at CVS. He said that about a month before his arrest, he took the pictures of the boys engaging in oral and anal sex inside his room at

---

[2] Further investigation revealed that the telephone number listed on the CVS film processing envelope was only one digit off from the defendant's actual telephone number, 410-3_7_0-2158, which D.B. said he used to contact the defendant.

3

135 P Street, N.W. He said that he submitted the film for processing, but the store would not allow him to pick up the prints. The defendant identified the boys in the CVS photographs by their first names, which are consistent with the names of A.B. and D.B.

About five days after the defendant was arrested, the police interviewed 12-year-old D.B. He told the police that he knew "Thomas" for about three years and had sex with him on a number of occasions. D.B. said that sometimes, after they had sex, "Thomas" gave him money. D.B. also said that "Thomas" had sex with A.B. When asked about the CVS pictures, D.B. stated that "Thomas" asked A.B. and D.B. to have sex with each other while he took pictures of them. "Thomas" promised to pay them $500 each for the pictures, but he did not pay them. D.B. also corroborated A.B.'s claim that "Thomas" intended to send the sexually explicit pictures to A.B.'s mother. D.B. said that he saw the card containing the pictures in "Thomas's" car.[3] He also told the police that "Thomas" bought him a dirt bike; helped him to concoct a phoney school fund raising scheme in which D.B. would keep the money;[4] allowed him to play video games; showed him pornography; and gave him marijuana and alcohol to consume. D.B. said that he spent the night with "Thomas" and had sex with him as recently as one month before being interviewed. On December 19, 2005, about four days after the police interviewed D.B., they showed him a single photograph of the defendant. Without

---

[3] When the defendant was stopped on December 10, 2005, the sexually explicit card was found in the defendant's car. The pictures in the brown folder that the defendant gave to the police during the consent search of his room, appear to have been used to produce that card.

[4] Copies of the fund raising flyers were recovered from the brown folder that the defendant handed to the police during the consent search of his room.

4

hesitation, D.B. stated, "yes, that's him," identifying the defendant as the person that he knew as "Thomas."

III.   ARGUMENT

The defendant moves to sever and dismiss Counts Two through Four of the indictment charging First and Second Degree Sexual Abuse under 22 D.C. Code, §§ 3008 and 3009, arguing that (1) they are loosely related to the offense charged in Count One and were improperly joined; and (2) trial of the sexual abuse charges together with the production charge in Count One, will mislead and confuse the jury and prejudice his right to a fair trial. See Def.'s Mot. Sever at 3-6.   The defendant's motion should be denied because all of the offenses in the indictment are logically related and their probative value outweighs any potential prejudice to the defendant that their joinder may present.

   A.   The Counts Are Properly Joined.

Rule 8(a) of the Federal Rules of Criminal Procedure states that an indictment may "charge a defendant in separate counts with two or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." See Fed. R. Crim. P. 8(a) (West 2006).  Generally, Rule 8 is construed liberally in favor of joinder. See United States v. Gibbs, 904 F.2d 52, 56 (D.C. Cir. 1990) ("Joint trials may be preferred, given the heavy and increasing criminal case load in our trial courts.").  For offenses to be properly joined under Rule 8, there must be a "logical relationship" between them. See United States v. Perry, 731 F.2d 985, 990 (D.C. Cir. 1984).  The predominant consideration in deciding whether a logical relationship exists is "whether joinder would serve the goals of trial economy and convenience . . . [so that] a given

5

transaction need only be proved once." Baker v. United States, 401 F.2d 958, 971 (D.C. Cir. 1968). "[W]here there is substantial overlap in evidence between two offenses, joinder 'eliminates the need to prove substantially the same evidence twice over, thus realizing precisely the kind of economy envisaged by Rule 8(a).'" United States v. Richardson, 161 F.3d 728, 734 (D.C. Cir 1998) (quoting Blunt v. United States, 404 F.2d 1283, 1288 (D.C. Cir. 1968)). Here it is clear that the offenses are properly joined in the indictment because all of them involve the defendant's sexual exploitation of D.B.

That Counts One and Two are logically related is undeniable given the CVS photographs, which show D.B. engaged in anal and oral sex with A.B. Count One alleges that the defendant used, persuaded, induced and enticed D.B. to have sex with A.B. so that he could take pictures of them. Oral sex with A.B. is one of the sexual acts that the defendant caused D.B. to perform so that he could photograph it. That sexual act is the basis for the sexual abuse charged in Count Two. Thus, the photographs that form the basis for Count One are the product of the defendant having caused D.B. to engage in the sexual act charged in Count Two. This interconnected conduct is precisely the type of single act or transaction that joinder under Rule 8(a) contemplates.

Furthermore, the government in proving Counts One and Two expects that there will be a substantial overlap in the witnesses and evidence. For each Count, the government expects to introduce evidence which shows that it was the defendant's idea to take the sexually explicit pictures of D.B. and that he induced D.B. to participate in those photographs by offering to pay him $500. Once D.B. agreed to the plan, the defendant provided the means and a location for the sexual acts charged in Count Two to take place so that he could produce the pictures that are the basis for Count One.

6

Specifically, the government's evidence will show that the defendant made his room available for D.B. to engage in sex with A.B. It also will show that the defendant was present during those sexual acts and he orchestrated and directed the posing. The evidence will further show that the defendant provided the camera and film used to take the pictures and that he took the photographs. Finally, the government will show that the defendant submitted the film to CVS for development and he attempted to collect the prints. On these facts, Counts One and Two bear not only a logical relationship to one another, but a temporal, factual and evidentiary relationship as well, and they are properly joined under Rule 8.

Likewise, Counts Three and Four, are sufficiently similar, and connected, to Counts One and Two to have been joined in a single indictment. Counts Three and Four charge the defendant with sexually abusing D.B. on numerous occasions at about the same time the he caused D.B. to have sex with A.B. so that he could photograph it. Significantly, Counts Three and Four charge the defendant with placing his mouth on D.B.'s penis and placing his penis in D.B.'s buttocks, the same sexual acts that the defendant caused D.B. to perform on A.B. (Count Two) and that are captured in the pictures (Count One). Counts Three and Four are not "discrete" and dissimilar," as the defendant contends. See Def.'s Mot. Sever at 5. Rather, they involve the same type of conduct charged in Count Two and depicted in the photographs that comprise Count One, and they can be properly joined on that basis.

Additionally, the conduct alleged in each count is probative of the defendant's intent with respect to the other counts. In cases involving child sexual abuse, a suspect's prior abuse of a particular victim, or of other children, is relevant to prove that the

7

defendant has an unusual sexual preference or compulsion to engage in the alleged conduct. See, Fed. R. Evid. 414 (West 2006); Pounds v. United States, 529 A.2d 791, 794 (D.C. 1987) (holding that suspects prior sexual contacts with a victim were admissible to prove intent with respect to subsequent sexual abuse because it tended to show a predisposition to gratify special desires with that particular victim). In fact, under the Federal Rules of Evidence, the defendant's prior alleged molestation of children may be "considered for its bearing on *any* matter to which it is relevant" and it is not limited to sexual deviance. See Fed. R. Crim. P. 414 (emphasis added).[5] Under this broad legal framework, the sexual abuse alleged in Counts Three and Four is probative of the abuse and exploitation charged in Counts One and Two because the defendant's sexual abuse of D.B. helps to explain how he was able to persuaded D.B. to have sex with A.B. and to allow him to take pictures of them.

While the government does not know what defense, if any, the defendant will mount to the offenses charged in Counts One and Two, one obvious strategy would be to attempt to discredit D.B.'s account that the defendant caused him to have sex with A.B. for purposes of taking the pictures. Consistent with that theory, one can imagine cross-examination questions suggesting that it was D.B.'s idea or that D.B. and A.B. were caught by the defendant having sex and he took the pictures to document it for their parents. Were the defendant to mount such a challenge, evidence of his direct sexual abuse of D.B., as charged in Counts Three and Four, would tend to undermine these

---

[5] Rules 413 through 415 of the Federal Rules of Evidence expressly permit the admission of evidence of a defendant's prior similar sex crimes and do not require that the prior acts involve the same victim. See Fed.R.Crim.P. 413 (permitting evidence of prior similar sex crimes in cases involving adult victims); 414 (permitting evidence of prior similar sex crimes in cases involving child victims); and (415 (permitting the same in civil cases involving child victims).

innocent explanations and bolster D.B.'s credibility, with respects to Counts One and Two.  See Fed. R. Crim. P. 413.[6]

The defendant relies extensively on United States v. Richardson, 161 F.3d 728 (D.C. Cir. 1998), for the proposition that the non-federal sexual abuse charges set forth in Counts Two through Four should be severed and dismissed.  See Def.'s Mot. Sever at 2-5.  However, Richardson, is easily distinguishable from this case.  In Richardson, the defendant was charged under federal law with possession of a firearm and was arrested for that offense.  While he was being arrested on the federal charge, the defendant threatened one of the officers involved in the arrest.  He was charged with threats, an offense that alone could not have been brought in federal court.  Both charges were joined in a single federal indictment.  The District Court, upon Richardson's motion, severed the counts, finding that charges do not become related "solely by way of an intervening arrest."  Id. at 734.  In so holding, the court emphasized that there was "no overlap of issues or evidence between the weapons and threats offenses."  Id. at 734.  In

---

[6] When Congress amended the Federal Rules of Evidence to allow the admission of the defendant's prior sexual abuse, the bill's chief sponsor explained the need for this evidence as follows:

> The proposed reform is critical to the protection of the public from rapists and child molesters, and is justified by the distinctive characteristics of the cases it will affect.  In child molestation cases . . . a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant -- a sexual or sadosexual interest in children -- that simply does not exist in ordinary people.  Moreover, such cases require reliance on child victims whose credibility can readily be attacked in the absence of substantial corroboration.  In such cases, there is a compelling public interest in admitting all significant evidence that will illuminate the credibility of the charge and any denial by the defense.

See Cong. Rec. H8991-92, Aug. 21, 1994, cited following Fed. R. Evid. 413 (West 2006).

9

contrast, here, all of the offenses charged in the indictment are interconnected as to time, place, people, conduct, and evidence. The holding of Richardson is therefore limited to its unique facts and cannot be read, as the defendant urges, to warrant severance of the counts in this case.

There being no grounds to conclude under Rule 8(a), that Count One is improperly joined with Counts Two through Four, the defendant's motion should be denied.

>   B.   The Counts Should Not Be Severed Because The Evidence Related To Each Count Will Be Admissible In The Separate Trials Of The Other Counts.

The defendant argues -- without elaboration -- that he will be prejudiced if the child sexual abuse charges are part of the same trial as the sexual exploitation charge. See Def.'s Mot. Sever at 6. In support of his request to sever those Counts, he cites Rule 14(a) of the Federal Rules of Criminal Procedure, which states that "if the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant, . . . the court may . . . sever the defendants' trials." Id. (citing Fed. R. Crim. P. 14(a)).

The defendant's concerns about prejudice, however, are not warranted given the admissibility of the defendant's sexual abuse of D.B. under Fed. R. Evid. 414, to prove any fact relevant to the exploitation charge. See Fed. R. Evid. 414 (a) and (d).[7] Indeed,

---

[7] Rule 414(a) states,

> In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

See Fed. R. Crim. P. 414(a) (West 2006). An "offense of child molestation" includes any conduct proscribed by chapter 110 of title 18 of the United States Code, which is the charge set forth in Count One, see Fed. R. Evid. 414 (d)(2), and any state law violation

10

when Congress amended the Federal Rules of Evidence to permit the admissibility of this type of evidence, it appears to have considered and rejected the notion that the such evidence is more prejudicial than probative.  See Cong. Rec. H8991-92, Aug. 21, 1994, cited following Fed. R. Evid. 413 (West 2006) (concluding that there should be a "presumption in favor of admission" because the "probative value" of such evidence "is normally not outweighed by any risk of prejudice or other adverse effects"); see also United States v. Long, 328 F.3d 655 (D.C. Cir. 2003) (affirming district court's decision to admit under Rule 404(b) evidence the defendant engaged in sex acts with boys who were not the victims in the case and find under Rule 403 that the admission of such evidence was more probative than prejudicial because it tended to negate the defendant's innocent explanation for his conduct).  Accordingly, there is no reason to sever the counts in this indictment under Rule 14.

**WHEREFORE**, for the above stated reasons, the government respectfully requests that the defendant's motion to sever and dismiss counts be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By: _____
JULIEANNE HIMELSTEIN
DENISE A. SIMMONDS,
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C.  20530
(202) 353-8077

---

involving contact between any part of the defendant's body and the genitalia or anus of a child, as charged in Count Three, see Fed. R. Evid. 414(d)(3), or contact between the genitalia of the defendant and any part of a child's body, as charged in Count Four, see Fed. R. Evid. 414(d)(4) (West 2006).

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a copy of the foregoing was served by mail upon the attorney for the defendant, Danny Onorato, Schertler & Onorato, 601 Pennsylvania Avenue, N.W., North Building, 9th Floor, Washington, D.C. 20004, on this _____ day of April 2007.

                                                _____
                                                JULIEANNE HIMELSTEIN
                                                DENISE A. SIMMONDS