# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 07-007 (GK)** |
| | : | |
| **ANDRE DREW** | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MOTION IN LIMINE TO INTRODUCE OTHER CRIMES AND BAD ACTS EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 404(b) AND 414  & OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE SUCH EVIDENCE

The United States Attorney, by and through the United States Attorney for the District of Columbia, hereby moves *in limine* for admission of certain evidence pursuant to Federal Rules of Evidence 404(b) and 414, and hereby opposes the defendant's motion to preclude such evidence. The government relies upon the points and authorities cited herein and at any hearing on this matter to support its request for admission of this evidence.

I.    PROCEDURAL BACKGROUND

On January 31, 2007, a federal grand jury indicted the defendant, Andre Drew, on one count of Enticing a Minor in Sexual Conduct for the Purpose of Production, in violation of 18 U.S.C. § 2251(a) (Count One); two counts of First Degree Child Sexual Abuse, in violation of D.C. Code § 22-3008 (Counts Two and Three); and one count of Second Degree Child Sexual Abuse, in violation of D.C. Code § 22-3009 (Count Four).  Upon the grand jury indicting the defendant in this Court, the government moved to dismiss without prejudice the pending action in the Superior Court for the District of Columbia.[1]

---

[1]  The defendant had been indicted in the Superior Court on February 22, 2006, on fourteen counts of First and Second Degree Child Sexual Abuse (with Aggravating Circumstances) and Use of a Minor in a Sexual Performance, for conduct involving three

II.    <u>FACTUAL BACKGROUND</u>

On December 10, 2005, 13-year-old A.B. called 911 and reported that he, and a 12-year-old male friend, D.B., had been abducted at gunpoint in front of Dunbar High School in the District of Columbia.  A.B. said that they were taken to 135 P Street, N.W., to a room on the second floor, whose door was the first one on the left.  There, he claimed that they were forced to perform oral and anal sex on each other while their abductor took photographs.  However, upon further questioning, A.B. admitted that he had not been abducted, but he maintained that a man that he knew for three years, named Andre Thomas Drew, took pictures of him and D.B. engaged in sex in the room located at 135 P Street, N.W.  A.B. explained that the defendant offered to pay him and D.B. $500 each if they engaged in sex so that the defendant could take pictures of them. They agreed and about one month earlier (sometime in November 2005), they went to the defendant's room at 135 P Street, N.W., where they engaged in sex while the defendant took pictures.  A.B. said that he called the police on December 10, 2005, because the defendant was going to mail the sexually explicit photograph's to A.B.'s mother.

A.B. showed the police the defendant's room and he gave them a physical description of the defendant and the defendant's car.   As A.B. was being taken to the police station, A.B. saw the defendant drive by in his car and he pointed the defendant out to an officer.  The car was stopped and A.B. identified the defendant -- the sole occupant of the vehicle -- as the person who

---

adolescent boys under the age of 16, including D.B., the victim in this case.  Due to one mutually requested continuance and other continuances requested by the defendant or necessitated by his requests for new counsel, the trial in Superior Court did not commence as scheduled.  When the last trial date, December 6, 2006, was continued because the defendant requested new counsel on the eve of trial, the government considered removing the case to federal court.  Realizing that there were grounds for a federal action, the government indicted the case in this Court in less than sixty days.

took the sexually explicit pictures of him and D.B.

The defendant was taken back to 135 P Street, N.W., where he verbally and in writing consented to a search of his room. After he verbally consented to the search, but before he signed the form, the defendant handed a police officer a brown folder, stating "this is what you are looking for," or words to that effect. The officer, who previously had seen the folder, told the defendant that he should wait until he signed the consent form. The defendant signed the form and the police retrieved the brown folder, which contained photographs of A.B. having anal and oral sex with an adolescent male, later identified as D.B. These photographs had the background cut away from the figures.

During that investigation, the police also realized that A.B. was one of the boys in a set of sexually explicit photographs that a local CVS had given to the police in November 2005, and that the defendant was the man on the surveillance videotape submitting the film for processing and attempting to retrieve the prints. The name printed on the film processing envelope was "Thomas Caclin" and the telephone number listed was 410-320-2158.[2]

The defendant was arrested and transported to the police station. There, he was read his Miranda rights and he signed a waiver of those rights agreeing to speak to the police without an attorney. During that interview, the defendant told the police that he took the pictures that were developed at CVS. He said that about a month before his arrest, he took the pictures of the boys engaging in oral and anal sex inside his room at 135 P Street, N.W. He said that he submitted the film for processing, but the store would not allow him to pick up the prints. The defendant

---

[2] Further investigation revealed that the telephone number listed on the CVS film processing envelope was only one digit off from the defendant's actual telephone number, 410-370-2158, which D.B. said he used to contact the defendant.

identified the boys in the CVS photographs by their first names, which are consistent with the names of A.B. and D.B.

About five days after the defendant was arrested, the police interviewed 12-year-old D.B. He told the police that he knew "Thomas" for about three years and had sex with him on a number of occasions. D.B. said that sometimes, after they had sex, "Thomas" gave him money. D.B. also said that "Thomas" had sex with A.B. When asked about the CVS pictures, D.B. stated that "Thomas" asked A.B. and D.B. to have sex with each other while he took pictures of them. "Thomas" promised to pay them $500 each for the pictures, but he did not pay them. D.B. also corroborated A.B.'s claim that "Thomas" intended to send the sexually explicit pictures to A.B.'s mother. D.B. said that he saw the card containing the pictures in "Thomas's" car.[3] He also told the police that "Thomas" bought him a dirt bike; helped him to concoct a phoney school fund raising scheme in which D.B. would keep the money;[4] allowed him to play video games; showed him pornography; and gave him marijuana and alcohol to consume. D.B. said that he spent the night with "Thomas" and had sex with him as recently as one month before being interviewed. On December 19, 2005, about four days after the police interviewed D.B., they showed him a single photograph of the defendant. Without hesitation, D.B. stated, "yes, that's him," identifying the defendant as the person that he knew as "Thomas."

---

[3] When the defendant was stopped on December 10, 2005, the sexually explicit card was found in the defendant's car. The pictures in the brown folder that the defendant gave to the police during the consent search of his room, appear to have been used to produce that card.

[4] Copies of the fund raising flyers were recovered from the brown folder that the defendant handed to the police during the consent search of his room.

III.    NOTICE OF GOVERNMENT'S INTENT TO SEEK ADMISSION OF EVIDENCE
        PURSUANT TO FEDERAL RULES OF EVIDENCE 404(b) AND 414

        The government hereby gives notice to the defendant of its intention to seek to admit

evidence pursuant to Federal Rules of Evidence 404(b) and 414.

        Rule 404(b) requires the government to provide the defendant with "reasonable notice in

advance of trial" of its intent to introduce evidence pursuant to this rule.  See Fed. R. Evid.

404(b) (West 2006).  That notice should inform the defendant of "the general nature" of the

evidence that the government will seek to admit.  Id.

        Rule 414 governs the admission of evidence of similar crimes in child molestation cases.

It too requires that notice be given to the defendant of the government's intent to introduce such

evidence.  Unlike Rule 404(b), which sets forth no specific time frame for the disclosure, Rule

414 requires notice to be given at least fifteen (15) days before trial begins.  See Fed. R. Evid.

414(b) (West 2006).[5]  Rule 414 contemplates that the government will provide the defendant

with information regarding the evidence of "another offense or offense of child molestation" that

the government will seek to admit in a criminal case in which a defendant is charged with "an

offense of child molestation."  See Fed. R. Evid. 414(a) (West 2006).[6]  Such notice may include

---

        [5]  The defendant's trial is scheduled to begin on May 7, 2007.  The government's notice
of its intent to introduce evidence pursuant to Rules 404(b) and 414, is therefore timely.

        [6]  Rule 414 defines a "child" as a person under the age of 14.  See Fed. R. Evid. 414(d)
(West 2006).  The victim in the defendant's case, D.B., was 12 years old when the government
alleges that the defendant sexually assaulted him and caused him to engage in sex with another
child for purposes of photographing them.  An "offense of child molestation" is defined as a
crime under Federal or State law that involves, among other things, "any conduct proscribed by
chapter 110 of title 18, United States Code," see Fed. R. Evid. 414(d)(2), or any "contact
between" the defendant's body and the genitalia or anus of a child, see Fed. R. Evid. 414(d)(3),
or the defendant's genitalia or anus and any part of the body of a child, see Fed. R. Evid.
414(d)(4) (West 2006).  In the instant case, the defendant is charge with one count of Enticing a

the "statements of witnesses or a summary of the substance of any testimony that is expected to be offered." See Fed. R. Evid. 414(b) (West 2006).

Accordingly, the government hereby gives the defendant notice of its intent to introduce the following categories of evidence at trial in this matter:

(1)    Defendant's 1984 Convictions for Sodomy & Kidnapping in F-4123-83

The government intends to introduce at trial evidence concerning the conduct underlying the defendant's 1984 convictions for Sodomy and Kidnapping. Specifically, the government intends to introduce evidence that on or about July 20, 1983, on two separate occasions within the District of Columbia, the defendant, pretending to be a police officer, purported to place two teenage boys (ages 15 and 17) under arrest and took them to a secluded area where he placed lubricant in their anus and forcibly raped them. The defendant pleaded guilty in 1984 in that case.

(2)    Defendant's Sexual Acts with Other Child Victims

The government will seek to introduce, through D.B.'s testimony, evidence that the defendant engaged in sex with A.B., in D.B.'s presence. The government believes that D.B. will testify that he saw the defendant place his mouth on A.B.' penis and place his penis between A.B.'s buttocks after applying a lubricant.

(3)    Defendant's Intent to Send Sexually Explicit Pictures to A.B.'s Mother

The government expects to introduce evidence that the defendant told D.B. that he

---

Minor in Sexual Conduct for the Purpose of Production, in violation of 18 U.S.C. § 2251(a), a Federal sexual exploitation charge under chapter 110 of title 18. See 18 U.S.C. § 2251 (West 2006). He also is charged with three counts of sexual abuse under District of Columbia law, in violation of 22 D.C. Code §§ 3008 and 3009, which involve contacts between the defendant's mouth or penis and the buttocks or penis of D.B.

intended to send a card containing the sexually explicit photographs of A.B. and D.B. to A.B.'s

mother. D.B. also will testify that he saw such a card in the defendant's car. The defendant

made the card and threatened to send it to A.B.'s mother because he believed that A.B. took

money from him and he wanted A.B. to return it.[7]

    (4)    Defendant's Participation in a Fraud Scheme with Child Victims

    The government contends that the defendant engaged in a variety of conduct designed to

make his home an attractive place for teenage boys to visit and to give them reasons to seek out

the defendant for assistance. One example of that conduct, which the government intends to

offer at trial, is the defendant helping the boys to design and print flyers and sign-up sheets for a

bogus school fund raising scheme in which the boys solicited donations, but kept the money.

The government will not seek to introduce in its case-in-chief, the paperwork created by the

defendant in furtherance of that scheme.

    (5)    Adult Pornography Tapes Shown To Child Victims & Playing Sexual Games

    The defendant showed his child victims adult pornography tapes involving heterosexual

sex. He also played strip poker with his child victims. Showing the boys pornography and

playing strip poker with them was another inducement and benefit the defendant gave the boys so

that they would continue to come to see him and do the things that he wanted them to do,

including having sex. The pornography and strip poker game also helped to lower the boys'

inhibitions about nudity and sex, and helped to pave the way for the defendant to have sex with

the boys and for the boys to have sex with each other. Sometimes after watching pornography

---

    [7] The government will not seek to introduce in its case-in-chief, the card itself or the
pictures found in the brown folder that appear to have been used to create the card.

with his child victims, the defendant had sex with them.

 (6) <u>Defendant's Providing His Child Victims With Alcohol and Marijuana</u>

 The government will seek to admit evidence that the defendant gave his child victims marijuana to smoke and that he smoked marijuana with them.  It also will seek to introduce evidence that the defendant gave his child victims alcohol to consume.   This benefit was given to the boys to make the defendant's residence an attractive place to visit and to entice them to do the things that the defendant wanted them to do, including nudity and having sex.  The alcohol and drugs also served to lower the inhibitions of the boys so that they would engage in sexual activity with the defendant or each other.

 (7) <u>Defendant's Providing D.B. With Gifts and Money</u>

 The government intends to introduce evidence, including but not limited to testimony, photographs and documents, showing that the defendant took D.B. to a Modell's sporting goods store to purchase a minibike and that the defendant paid for a portion of the bike.  Additionally, the government expects to introduce evidence that the defendant required D.B. to keep the minibike at the defendant's residence.  The defendant used the minibike to induce D.B. and the other boys to visit him at his residence and he used his contribution to its purchase as leverage against D.B. to induce him to have sex with the defendant.   The defendant further induced D.B. to visit him and to have sex with him and another child by giving D.B. money and buying presents for him, including a cellular telephone, pants and shoes.

 (8) <u>Defendant's Lying to the Police about D.B.</u>

 The government will seek to admit evidence that around Thanksgiving 2005, D.B.'s mother became concerned because she could not find D.B.  She contacted the Metropolitan

Police Department and an officer went to the defendant's home at 135 P Street, N.W.  The defendant told the police that he did not know D.B. and he did not know D.B.'s whereabouts.

(9)    <u>Taking Other Sexually Explicit Photographs of Child Victims</u>

The government intends to introduce evidence that the defendant took other sexually explicit pictures of the boys using a different type of camera.  The government was not able to find and obtain these other photographs.  These pictures are not the photographs taken by the defendant and submitted to CVS for development.

(10)    <u>Defendant's Interest In Child Pornography</u>

The government will seek to admit evidence of the defendant's substantial appetite for child pornography depicting young boys.  Specifically, the government intends to introduce (a) the defendant's notebooks listing child pornography web sites from the internet; (b) photographs and printouts from the web sites listed in the notebooks; and (c) records relating to the defendant's frequenting of child pornography web sites through his Yahoo! e-mail account records.

IV.    <u>LEGAL ARGUMENT</u>

A.    <u>Federal Rules of Evidence</u>

All relevant evidence is admissible, except as provided by the Constitution of the United States, by Act of Congress, by the Federal Rules of Evidence, or by other rules prescribed by the Supreme Court pursuant to statutory authority.  <u>See</u> Fed. R. Evid. 402 (West 2006).  Evidence is relevant if it tends to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  <u>See</u> Fed. R. Evid. 401 (West 2006).

Rule 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character, but is admissible for any non-propensity purpose, including motive, intent, plan, knowledge, and absence of mistake.  See United States v. Bowie, 232 F.3d 923, 926, 930 (D.C. Cir. 2000).  Importantly, this rule is one of "inclusion rather than exclusion." Id. at 929.  As the Court of Appeals has noted en banc, while "the first sentence of the rule is framed restrictively, the rule itself is quite permissive, prohibiting the admission of other crimes evidence in but one circumstance – for the purpose of proving that a person's actions conformed to his character.  United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998)(internal quotations omitted).  In short, " Rule 404(b) bars not evidence as such, but a theory of admissibility." Id.  As the Court stated in United States v. Cassell, 292 F.3d 788, 795 (D.C. Cir. 2002)(citing United States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original), "[t]rue, the evidence may tend to show that [defendant] is a person of bad character, but Rule 404(b) does not thereby render it inadmissible.  To reiterate what we have stated before . . . under Rule 404(b), 'any purpose for which bad acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character.'" Id. (emphasis in original).

The general prohibition against the admission of propensity evidence under Rule 404(b), however, does not apply in sexual abuse cases.  See Fed. R. Evid.  413 - 415 (West 2006).  Specifically, in child molestation cases, evidence that a defendant committed "other offenses or other offenses of child molestation" is admissible "and may be considered for its bearing on any matter to which it is relevant," see Fed. R. Evid. 414(a) (West 2006) (emphasis

10

added), including the defendant's propensity to commit sexual assaults or to molest children.[8]
See Cong. Rec. H-8991-92, Aug. 21, 1994, cited following Fed. R. Evid. 413 (West 2006) ("The
new rules will supercede in sex offense cases the restrictive aspects of Federal Rule of Evidence
404(b) . . . . [T]he new rules . . . authorize admission and consideration of evidence of an
uncharged offense for its bearing 'on any matter to which it is relevant' . . . includ[ing] the
defendant's propensity to commit sexual assault or child molestation offenses.").  Such evidence
is admissible regardless of whether it resulted in prosecution or conviction and no time limit is
imposed on the uncharged offense.  Indeed, evidence of similar sexual offenses is admissible
even where there has been a substantial lapse of time between those offenses and the charged
offense.  See id. (citing United States v. Hadley, 918 F.2d 848, 850-51 (9th Cir. 1990, cert.
dismissed, 113 S.Ct. 486 (1992) (admitting evidence of offense occurring 10 years earlier); State
v. Plymate, 345 N.W.2d 327 (Neb. 1984) (admitting evidence of defendant's commission of
other child molestation more than 20 years earlier)).[9]

          All evidence, whether admissible under Rule 404(b) or Rule 414, is subject to the
strictures of Rule 403.  Thus, the admissibility of other crimes or bad acts evidence rests on a
two-step inquiry: 1) whether the other crimes evidence is relevant to an issue in the case, see Fed.
R. Evid. 404(b), including propensity, see Fed. R. Evid. 414, and if so, 2) whether the evidence is

---

[8]  In arguing that the government may not seek to admit other bad acts evidence to prove
propensity, see Def.'s Mot. To Exclude, passim, the defendant ignores Rule 414.

[9]  In this regard, Rule 414 is consistent with the D.C. Court of Appeals' view that
evidence of an "unusual sexual preference" may be admitted solely to prove predisposition.  See,
e.g., Howard v. United States, 663 A.2d 524, 529 (D.C. 1995); Feaster v. United States, 631 A.2d
400 (D.C. 1993); Johnson v. United States, 610 A.2d 729, 730 (D.C. 1992); Pounds v. United
States, 529 A.2d 791, 793-94 (D.C. 1987); Adams v. United States, 502 A.2d 1011, 1015 (D.C.
1986).

admissible under Rule 403 because its probative value is not substantially outweighed by the

danger of unfair prejudice.  As its language reflects, Rule 403 "tilts, as do the rules as a whole,

toward the admission of evidence in close cases" -- even when other crimes evidence is involved.

See United States v. Moore, 732 F.2d 983, 987, 989 (D.C. Cir. 1984); Huddleston v. United

States,  485 U.S. 681, 688-89 (1988) ("Congress was not nearly so concerned with the potential

prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be

placed on the admission of such evidence").[10]

　　　As discussed more fully below, the evidence which the government seeks to admit in this

case easily meets the requirements of the Federal Rules of Evidence.

　　　B.  The Evidence is Relevant.

　　　All of the evidence that the government seeks to admit is relevant to prove that the

defendant sexually abused D.B. and caused him to have sex with another boy so that the

defendant could photograph them.  At the center of the government's case is the unusual

relationship between the 57-year-old defendant, 12-year-old D.B., and the other boys.  The

evidence that the government seeks to admit in Categories 3-7 and 9, explains that relationship

and shows that it was not innocent.  Instead, the proffered evidence demonstrates that the

---

　　　[10] As for the burden that must be met in presenting other crimes evidence, the Court is not required to make any sort of preliminary finding or to weigh the evidence as to the other crimes. Indeed, as the Supreme Court has emphasized, "[i]n determining whether the Government has introduced sufficient evidence to meet Rule 404(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence." Huddleston, 485 U.S. at 690 (emphasis added).  Instead, the trial court "simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact [other crimes evidence] . . . by a preponderance of the evidence." Id.  And in doing so, the trial court must consider all the pieces of evidence presented to the jury, both as to the other crimes evidence and the charged conduct.  Ibid.

defendant used drugs, alcohol, pornography and gifts, to ingratiate himself with D.B. and make his room an attractive place for D.B. to visit so that the defendant could molest and photograph him. The evidence set forth in Categories 5 and 6 further helps to explain how the defendant was able to diminish D.B.'s inhibitions about sex and nudity so that D.B. would be receptive to the defendant's sexual advances and to his request that D.B. have sex with another boy and allow the defendant to photograph it. These methods of grooming and enticement are relevant to the jury's understanding of how the defendant was able to sexually abuse and exploit D.B. as alleged in the charged offenses. See, e.g., United States v. Long, 328 F.3d 655 (D.C. Cir. 2003) (evidence that defendant promised to buy sneakers and other gifts for child victims was relevant to show that defendant's "pattern of ingratiation was animated by an intent to engage in sexual contact"); United States v. Forrest, 429 F.3d 73, 76 (4th Cir. 2005) (allowing testimony that the defendant offered to pay child victim money to photograph him nude and semi-nude).

The defendant's efforts to black mail A.B. (Category 3) and his denial to the police that he knew D.B. (Category 8), is probative of the defendant's criminal intent, which the government must prove with respect to Counts 1 and 4. Such evidence tends to show that the pictures were not taken for the innocent purpose of exposing the boys' conduct to their parents. A jury could infer from the Category 3 evidence that the defendant took the CVS pictures and that he was motivated to do so because he wanted to use them later as leverage against the boys. The Category 8 evidence tends to show that the defendant's relationship with D.B. was not a benign mentoring relationship as he had represented to D.B.'s mother, or he would have told the police that he knew him. That denial shows the defendant's consciousness of guilt and tends to make D.B.'s version of what the defendant was doing more credible.

13

Finally, the evidence set forth in Categories 1, 2 and 10 (collectively the "unusual sexual preference evidence"), is relevant to show the defendant's intent and his unusual sexual preference for teenage boys.  The plain language of Fed. R. Evid. 414, establishes that a defendant's history of engaging in sexual abuse is relevant to prove a current charges of sexual abuse and sexual exploitation.  See Fed. R. Evid. 414 (West 2006).  Such evidence may be considered for any relevant purpose, including whether the defendant has a propensity to commit the charged offenses.  Id.  Indeed, the D.C. Circuit has recognized the overwhelming probative value of a defendant's past history of sexual abuse in proving intent in child sexual abuse cases. See, e.g., Long, 328 F.2d at 661-62 (admitting under Rule 404(b) testimony of two children about defendant's sexual abuse of them to prove defendant's intent with respect to victims in charged offenses).

It also is difficult to imagine how a defendant's consumption of child pornography could be irrelevant in a case charging him with producing child pornography.  It is the government's theory that the defendant's voracious appetite for child pornography motivated him to create his own pornographic images of D.B.  In that context, the defendant's repetitive viewing of child pornography is probative of his intent in taking sexually explicit pictures of D.B.  The notion that viewing child pornography begets its creation, is not novel.  Congress sought to address precisely this issue in passing the child exploitation laws set forth in Section 110 of Title 18.  See Pub. L. No. 104-28, Sept. 30, 1996, cited following 18 U.S.C. § 2251 (West 2006) ("child pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites . . . it inflames the desires of child molesters . . . who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and

14

exploitation of actual children who are victimized . . . .").  Moreover, a defendant's possession
of pornographic images has been admitted as relevant to proving intent in cases where the
possession or production of child pornography is at issue.  See, e.g., Long, 328 F.3d at 663
(admitting adult pornographic and non-pornographic images possessed by the defendant as
relevant to defendant's intent in possessing child pornography); Forrest, 429 F.3d at 79-80
(admitting evidence of defendant's possession of pornographic and non-pornographic images of
adult males in case alleging that defendant produced child pornography).

     For these reasons, the proffered evidence is plainly relevant to the charged crimes.

C.  <u>The Evidence is Admissible Under Rule 404(b) or Rule 414</u>.

     As stated above, Rule 404(b) permits evidence of other bad acts to be admitted to prove
anything other than propensity to commit the crimes charged.  See Fed. R. Evid. 404(b) (West
2006).  The evidence that the government seeks to admit regarding the defendant's relationship
with D.B. and the other boys (Categories 3-7 and 9) tends to prove the defendant's intent,
motive, knowledge, and lack of mistake or accident, and is therefore admissible under Rule
404(b). See, e.g., Long, 328 F.2d at 661-62 (admitting under Rule 404(b) evidence about the
defendant's relationship with children to show how "seemingly innocent behavior by the
defendant culminated in sexual contacts.").  Evidence about the type of relationship that the
defendant had with D.B. and the other boys is particularly probative in a case such as this one,
where there is no biological evidence linking the defendant to D.B.  Proof that the defendant
sexually assaulted D.B. and that he induced him to have sex with A.B. so that he could
photograph them, will therefore rest on circumstantial proof of the defendant's intent.  The most
powerful evidence from which the jury can infer the defendant's state of mind as to the charged

15

offenses, is his past conduct.  See Huddleston, 485 U.S. at 685 ("[e]xtrinsic acts evidence may be critical, . . . especially when th[e] issue involved the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.").  Here, the other bad acts evidence listed in Categories 3 - 7 and 9, is being offered to show how the defendant induced and persuaded D.B. to engage in sex with him and with another boy while he took pictures.   It also is being introduced to rebut any innocent explanations that the defendant might offer for that conduct.  Rule 404(b) does not preclude the use of other bad acts evidence for this purpose.

The evidence set forth in Categories 1 and 2, concerning the defendant's sexual abuse of teenage boys other than D.B., is admissible for two independent reasons.  As an initial matter, it is admissible under Rule 404(b) to show the defendant's intent to engage in criminal sexual conduct with D.B.   Prior acts of sexual abuse are admissible to prove intent if there is a "threshold level of similarity" between those acts and the charged offenses.  See Long, 328 F.3d at 661.  Here, there can be little argument that the defendant's other acts of sexual abuse are similar to his abuse of D.B.  In this case and in the case underlying the defendant's convictions for sodomy and kidnapping (Category 1), the victims are teenaged boys.  The old case and the current case also involve the defendant placing lubricant in the anus or buttocks of his victims before sexually assaulting them.  D.B. will testify that he saw the defendant do the same thing to A.B. (Category 2).   This baseline similarity between the proffered evidence and the charged offenses satisfies Rule 404(b).  See Long, 328 F.3d at 661-62 (evidence must be relevant to show a pattern of operation that suggests intent and that undermines defendant's innocent explanations . . . the proffered evidence does not have to be identical to the charged offense, so long as they are closely related) (citations omitted).

Evidence that the defendant sexually abused other teenage boys also is admissible to show his unusual sexual preference for them and his propensity to commit the charged offenses. The D.C. Circuit Court recognized the unusual sexual preference exception over 60 years ago in Hodge v. United States, 126 F.2d 849 (D.C. Cir. 1942), and, along with the D.C. Court of Appeals, it has consistently allowed such evidence to be admitted in sexual abuse cases. See, e.g., Long, 328 F.3d at 661-62  (allowing testimony of two boys who were not the victims in the case to testify about the defendant's prior abuse of them); Pounds, 529 A.2d at 794 (admitting prior acts of child sexual abuse of same victim in incest case); Howard, 663 A.2d at 527-30 & n.7  (evidence that defendant had sex with little girl admissible in sexual assault case of another little girl).    Later, Congress added Fed. R. Evid. 414 that expressly permits such evidence to be admitted to show the defendant's propensity to commit child sexual abuse.  See Fed. R. Evid. 414(d)(2) -(d)(4) (West 2006).

For the same reasons, the child pornography evidence (Category 10), is admissible. Under Rule 404(b), such evidence is relevant to proving the defendant's intent in soliciting D.B. to pose for sexually explicit photographs.  See Forrest, 429 F.3d at 79-80 (where defendant was charged with producing child pornography, his possession of pornographic and non-pornographic images of adult men was admissible under Rule 404(b)).    Under Rule 414, the child pornography evidence  is admissible to show the defendant's propensity to sexually abuse children.  See Fed. R. Evid.  414 (West 2006).   The defendant disagrees that the child pornography evidence is admissible to show propensity.  See Def.'s Mot. Exclude at 7.  He relies on Long, 328 F3d at 664, citing Guam v. Shymanovitz, 157 F.3d 1154 (9th Cir. 1998), for this proposition.  However,  Long is not helpful to him.

17

Long is not an exclusion case.  There, the district court admitted into evidence several pornographic images that the defendant possessed.  The district court found that the pornographic images were being offered not merely to show a propensity to collect child pornography, but for legitimate 404(b) purposes, including to corroborate witnesses' testimony, to demonstrate the victims' relationship with the defendant, to rebut his defenses of fabrication and lack of possession, and to show modus operandi.  See Long, 328 F.3d at 662-63.  The D.C. Circuit Court affirmed the district court's ruling on 404(b) grounds.  Id.  In its opinion, however, the D.C. Circuit Court specifically stated that it  "express[ed] no view" on whether the possession of gay pornography could be admitted to prove propensity.  Id. at 663-64.   Long thus supports the government's position, *supra*, that the evidence proffered in Category 10 is admissible under Rule 404(b).  But more importantly, Long unequivocally leaves open the question of whether in this jurisdiction such evidence also may be considered to prove the defendant's propensity to commit child sexual abuse.[11]

The government contends that evidence concerning a defendant's consumption of child pornography should be admitted to show his propensity to commit child abuse.  That position is supported by Congress' belief that there is a direct connection between child pornography and

---

[11] Shymanovitz also does not warrant exclusion of the child pornography evidence.  In fact, the D.C. Circuit Court said that Long's reliance on Shymanovitz as grounds to exclude the pornography was misplaced.  See Long, 328 F.3d at 663-64.   But even if this jurisdiction followed Shymanovitz – and apparently it does not – query whether its holding would be applicable to the defendant's situation.  The exclusion of the pornography evidence in Shymanovitz seemed to turn on the 9th Circuit's belief that there was no evidentiary link between allegations that the defendant sexually abused children and his lawful possession of adult gay pornography.  See Shymanovitz, 157 F.3d at 1158-61.   Here, however the defendant is accused not only of sexually abusing D.B., but of using him to produce child pornography.  The evidentiary link that the court found lacking in Shymanovitz, thus seems to be present here and would militate in favor of the admission of the pornography evidence.

pedophilia.  Indeed, in enacting Section 2251, Congress expressly found that,

> [C]hild pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites, and as a model for sexual acting out with children; such use of child pornography can desensitize the viewer to the pathology of sexual abuse or exploitation of children, so that it can become acceptable to and even preferred by the viewer. . . . [I]t [child pornography] inflames the desires of child molesters, pedophiles and child pornographers who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials; the sexualization and eroticization of minors through any form of child pornographic images . . . encourag[es] a societal perception of children as sexual objects and lead[s] to further sexual abuse and exploitation of them[.]

See Pub. L. No. 104-208, Sept. 30, 1996, cited following 18 U.S.C. § 2251 (West 2006).

Similarly, in adding Rules 413 through 415 to the Federal Rules of Evidence, Congress sought to loosen the "restrictive aspects" of Rule 404(b) and make admissible in sexual abuse cases, all evidence that demonstrates a defendant's "sexual or sado-sexual interest in children – that simply does not exist in ordinary people."  See Cong. Rec. H8991-92, Aug. 21, 1994, cited following Fed. R. Evid. 413 (West 2006).  The consumption of child pornography, the government submits, is just one type of evidence that reflects a defendant's unusual sexual interest in children.

Therefore, under Rule 414, such evidence should be admissible and considered for any relevant purpose, including the defendant's propensity to abuse and exploit children.  See Fed. R. Evid. 414(a); see also United States v. Brand, 467 F.3d 179, 196-201 (5th Cir. 2006) (images of child pornography found on defendant's computer were admissible under Rule 404(b) to show the defendant's intent, and were otherwise admissible to show his predisposition, to have sex with person he believed was 13 years old ).

D.     The Evidence Is More Probative than Prejudicial

The defendant argues that the government seeks to admit other bad acts evidence against

19

him to show that he is "an immoral man, thus having a propensity to commit crimes."  <u>See</u> Def.'s

Mot. Exclude at 6.  Not true.  The government seeks to admit the other bad acts evidence to

demonstrate to the jury that the defendant is a pedophile who prays upon teenage boys for his

personal gratification.  The information regarding the nature of the defendant's relationship with

the boys -- which encompassed trips, gifts, money, alcohol, drugs, pornography and video games

-- is crucial to the jury understanding the context in which the defendant's abuse of D.B. took

place and the circumstances surrounding the creation of the pictures.   Those acts are not separate

from the charged acts of abuse and exploitation.  Rather, they are inextricably intertwined with

the charged offenses because they demonstrate how the defendant was able to ingratiate himself

with D.B. so that he could persuade D.B. to have sex with him and convince D.B. to have sex

with A.B. so that the defendant could take pictures of them.  That evidence also is probative of

why D.B. may have continued to go to the defendant's home notwithstanding that he was being

sexually abused by the defendant.  Evidence of the defendant's methods of grooming D.B. is

highly probative of his intent to engage in sex with D.B. and to have D.B. engage in sex with

another boy so that the defendant could photograph them.  The D.C. Circuit Court has

acknowledged the overwhelming value of such evidence in child sexual abuse cases.  <u>See</u>, <u>e.g.</u>,

<u>Long</u>, 328 F.3d at 661-62 (upholding as more probative than prejudicial, other crimes evidence

regarding manner in which alleged child molester developed relationships with his victims,

including promising to buy them sneaker and other gifts in exchange for sex).

 The evidence regarding the defendant's prior rape of two teenage boys and his

contemporaneous sexual abuse of A.B. -- at times in front of D.B. -- is more probative of D.B.'s

credibility and the defendant's guilt, than it is prejudicial to the defendant.  The likelihood that

one child might be fabricating the defendant's sexual abuse of him is high. But the likelihood

that two or more children would fabricate sexual abuse charges against the same person is low.

In a case such as this one where there is little or no additional evidence to help the jury decide

who is telling the truth, evidence of prior or contemporaneous sexual assaults by the defendant

on teenage boys shows his unusual sexual preference – and negates the possibility of innocent

presence or intent – and thus is highly probative evidence that the jury should consider. Also, the

logical leap from sexually abusing a child to staging that child in sexually explicit photographs,

is small. The defendant's viewing of child pornography, therefore, is highly probative not only

of his intent to sexually abuse D.B., but of his intent to create his own child pornography. In

contrast, the risk of unfair prejudice to the defendant by the admission of this evidence is low,

and certainly does not substantially outweigh is probative value. Actually, the risk of prejudice is

even lower in this case because Rule 414 permits the consideration of other crimes evidence for

propensity.

The prejudice that the defendant claims -- namely that the jury will convict him because

he has a propensity for sexual offenses -- is addressed by Rule 414. That Rule permits the jury to

consider evidence of the accused's other offenses or offenses of child molestation for any

relevant purpose, including propensity to commit the crimes alleged.  Rule 414, therefore

explicitly permits the jury to draw the very inference that the defendant claims amounts to

substantial prejudice warranting the exclusion of the proffered evidence. In amending the

Federal Rules of Criminal Procedure to allow propensity evidence in sexual abuse cases,

Congress explained that "[t]he practical effect of the new rules is to put evidence of uncharged

offenses in sexual assault and child molestation cases on the same footing as other types of

relevant evidence that are not subject to a special exclusionary rule."  <u>See</u> Cong. Rec. H8991-92, Aug. 21, 1994, cited following Fed. R. Evid. 413 (West 2006).  "The presumption," it said, "is in favor of admission" as such evidence "is typically relevant and probative" and its "probative value is normally not outweighed by any risk of prejudice or other adverse effects."  <u>See</u> <u>id</u>.[12] Moreover, even if the Court were to conclude that some of the evidence which the government seeks to admit may not be considered for propensity, it can instruct the jury in the beginning of the trial and in its final charge regarding how the evidence may be used.

WHEREFORE, for the above-stated reasons, the government respectfully requests that this Court (1) grant its motion <i>in limine</i> to admit the proposed evidence pursuant to Rule 404(b)

---

[12]  Congress further explained its legislative reasoning for allowing propensity evidence in sexual abuse cases as follows:

> The proposed reform is critical to the protection of the public from rapists and child molesters, and is justified by the distinctive characteristics of the cases it will affect.  In child molestation cases . . . a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant -- a sexual or sadosexual interest in children -- that simply does not exist in ordinary people.  Moreover, such cases require reliance on child victims whose credibility can readily be attacked in the absence of substantial corroboration.  In such cases, there is a compelling public interest in admitting all significant evidence that will illuminate the credibility of the charge and any denial by the defense.

<u>See</u> Cong. Rec. H8991-92, Aug. 21, 1994, cited following Fed. R. Evid. 413 (West 2006).

 and Rule 414 of the Federal Rules of Evidence;  and (2) deny the defendant's motion to exclude

that evidence.


                                  Respectfully submitted,

                                    JEFFREY A. TAYLOR
                                    United States Attorney


                                    _____

                                    Julieanne Himelstein
                                    Assistant U.S. Attorney
                                    555 4th Street, N.W., 4th Floor
                                    Washington, D.C.  20530
                                    (202) 514-8203


                                    _____

                                    Denise A. Simmonds
                                    Assistant United States Attorneys
                                    555 Fourth Street, N.W., 10th Floor
                                    Washington, D.C. 20530
                                    (202) 353-8077

CERTIFICATE OF SERVICE

We hereby certify this _____ day of April 2007, that a true and correct copy of the Government's Motion In Limine to Admit Evidence Pursuant to Rules 404(b) and 414 and Opposition to the Defendant's Motion to Exclude Such Evidence, was served upon defense counsel, Danny Onorato, Schertler & Onorato, 601 Pennsylvania Avenue, N.W., North Building, 9th Floor, Washington, D.C. 20004.

_____
Julieanne Himelstein
Assistant U.S. Attorney

_____
Denise A. Simmonds
Assistant U.S. Attorney

24