UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 07-007 (GK) |
| | ) | |
| ANDRE DREW | ) | |
|     Defendant. | ) | |

**REPLY BRIEF TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

Defendant, Andre Drew, by and through undersigned counsel, respectfully submits a Reply Brief to the Government's Opposition to Defendant's Motion to Suppress Evidence and Statements. In support of this Brief, Mr. Drew states the following:

**I. BACKGROUND**

It was Mr. Drew's understanding, per the government's motions filed while this case was pending in the Superior Court of the District of Columbia, that the government did not intend to introduce any alleged statements made by Mr. Drew, nor any alleged tangible evidence seized from his home.[1] The government now states in its Opposition to Defendant's Motion to Suppress Evidence and Statements that it does intend to introduce alleged tangible evidence that it purportedly obtained by way of a subpoena *duces tecum* issued to Mr. Drew's brother.

The police officers conducted at least two warrantless searches of Mr. Drew's home absent any exigent circumstances. After Mr. Drew's arrest, the government obtained a search warrant for his home, which was allegedly executed on January 4, 2006. On this date, they supposedly discovered that the items from Mr. Drew's home had been removed. Thereafter, the

---

[1] Mr. Drew reserved the right to raise a suppression argument if the government noticed its intent to introduce tangible evidence during its case-in-chief. Not until receipt of the government's opposition motion, did Mr. Drew learn that the government intended to introduce physical evidence obtained directly from a subpoena *duces tecum* issued to a third party, indirectly from its searches of Mr. Drew's home.

government issued a subpoena *duces tecum* to Mr. Drew's brother. The government maintains that on January 30, 3006, Mr. Drew's brother provided the government with items that he removed from Mr. Drew's home.

## II. THE EVIDENCE ALLEGEDLY OBTAINED BY WAY OF THE GOVERNMENT'S SUBPOENA *DUCES TECUM* SHOULD BE SUPPRESSED AS IT IS THE FRUIT OF THE POISONOUS TREE.

Mr. Drew respectfully submits that any physical evidence obtained as a result of the government's subpoena to his brother, a third party, should be suppressed as such evidence is tainted pursuant to the fruit of the poisonous tree doctrine. The government's claim that it lawfully obtained items that were kept in Mr. Drew's apartment, but taken by his brother subsequent to Mr. Drew's arrest in this matter, is entirely without merit.

First, the police officers did not have lawful justification for their initial warrantless searches of Mr. Drew's home. "Under the Fourth Amendment, a 'search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions.'" *United States v. Goree*, 365 F.3d 1086, 1089 (D.C. Cir. 2004). No such exceptions apply in this case. Furthermore, any evidence directly and indirectly obtained from an unconstitutional search of one's home is also subject to the exclusionary rule. The seminal Supreme Court case discussing the fruit of the poisonous tree doctrine, *Wong Sun v. United States*, 371 U.S. 471, 484-485 (1963), explicitly stated the following:

> In order to make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person, (internal citations omitted) this Court held nearly half a century ago that evidence seized during an unlawful search could not constitute proof against the victim of the search (internal citations omitted). The exclusionary prohibition extends as well to the indirect as the direct products of such invasions (citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920). … [The Court in *Silverthorne* stated] that the Government might not make use

2

> of information obtained during an unlawful search to subpoena from the victims the very documents illegally viewed [and] expressed succinctly the policy of the broad exclusionary rule: [t]he essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed. (internal citation omitted).

*Wong Sun*, 371 U.S. at 484-485.

The tangible evidence sought to be used against Mr. Drew in the trial in this matter fits squarely within the parameters of *Wong Sun*. The police officers abused their access to Mr. Drew's apartment and searched it unlawfully on at least two occasions prior to obtaining a search warrant. Although the government does not outwardly admit this, it seems as though it concedes the unlawfulness of these initial searches, as it does not seek to admit, in its case-in-chief, any of the items allegedly recovered during these searches. Based on the police officers' observations during the course of these unlawful searches of Mr. Drew's apartment, the government issued a subpoena to Mr. Drew's brother and acquired physical objects that were purportedly taken from Mr. Drew's apartment. An evidentiary hearing on this Motion will demonstrate that any evidence obtained pursuant to the subpoena *duces tecum* is clearly the fruit of the poisonous tree, the poisonous tree being the initial unlawful searches of Mr. Drew's home.

**III. CONCLUSION**

WHEREFORE, for the foregoing reasons and any reasons that appear to the Court during a hearing on this Motion, we respectfully request that the Court grant Mr. Drew's Motion and suppress all tangible evidence obtained unlawfully by the government.

Respectfully submitted,

**SCHERTLER & ONORATO, L.L.P.**

_____/s/_____
Danny Onorato (D.C. Bar No. 480043)
Michael Starr (D.C. Bar No. 461773)
601 Pennsylvania Avenue, NW
North Building, 9th Floor
Washington, D.C.  20004
202-628-4199 *telephone*
202-628-4177  *facsimile*

Counsel for Andre Drew

**CERTIFICATE OF SERVICE**

      I hereby certify that copies were served electronically, on this 25th day of April 2007, to the following:

Julieanne Himelstein
Denise A. Simmonds
Assistant United States Attorneys
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C.  20001
(202) 514-8203 (tel.)
(202) 305-8537 (fax)
julieanne.himelstein@usdoj.gov
denise.simmonds@usdoj.gov

                                            _____/s/_____
                                            Danny Onorato