UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 07-007 (GK) |
| | ) | |
| ANDRE DREW | ) | |
|     Defendant. | ) | |

**MOTION TO SUPPRESS TANGIBLE EVIDENCE AND SUPPLEMENTAL
STATEMENT OF POINTS AND AUTHORITIES**

Defendant, Andre Drew, by and through undersigned counsel, respectfully submits a Motion to Suppress Tangible Evidence and Supplemental Statement of Points and Authorities.[1] In support of this Brief, Mr. Drew states the following:

**I. BACKGROUND**

It is undisputed that the police officers conducted two warrantless searches of Mr. Drew's home. After the first two warrantless searches, the police officers obtained a search warrant for Mr. Drew's home, and at the time of executing this search warrant, they purportedly did not seize any items that they seek to introduce at trial. Finally, they issued a subpoena to Mr. Drew's brother and allegedly obtained items that had been in Mr. Drew's home. At the motions hearing before this Court on May 1, 2007, the government conceded that the *first search of Mr. Drew's home was unlawful*. The government intends to introduce the evidence that it obtained pursuant to the subpoena served on Mr. Drew's brother during the trial in this matter.[2] The issue before

---

[1] Mr. Drew had not initially filed a Motion to Suppress Tangible Evidence as it was his understanding that the government did not seek to introduce any physical evidence obtained as a result from the searches of his home. However, upon the filing of the Government's Opposition to Defendant's Motion to Suppress Evidence & Statements (hereinafter "Government's Opposition"), Mr. Drew learned that the government did in fact seek to introduce such evidence. Thereafter, in his pleading, styled as a "Reply Brief" he objected to the admissibility of any tangible evidence recovered from the subpoena served on his brother. In that regard, Mr. Drew hereby incorporates all arguments raised in his Reply Brief into the foregoing Motion.

[2] "These items include, the dirt bike and paperwork related to its purchase; various notebooks containing, among other things, lists of pornographic web sites; a box of VCR tapes and personal papers; a box containing two video

the Court at present is whether it should suppress such evidence. We respectfully submit that the tangible evidence that the government seeks to introduce is the direct product of two unlawful searches of Mr. Drew's home, constitutes the fruit of the poisonous tree and therefore should be suppressed.

## II. THE POLICE OFFICERS DID NOT OBTAIN A VALID CONSENT FROM MR. DREW TO SEARCH HIS HOME.

This Court must find that Mr. Drew's alleged consent to the search of his home was invalid. As previously stated, the government concedes that its initial warrantless search of Mr. Drew's home on December 10, 2005 was unlawful. During this unlawful search, police officers looked inside a brown folder in Mr. Drew's apartment and allegedly found pictures of A.B. and D.B. engaged in sexual acts, replaced those pictures back into the folder and left Mr. Drew's home. The officers accompanied Mr. Drew back to his home after already having an opportunity to search it that same day. The officers then alluded to the folder with photographs, at which point Mr. Drew responded "this is what you are looking for." *See* Government's Opposition at 5. At this time, Mr. Drew allegedly signed the consent form. *Id*.

The above scenario represents the classic case of where the "cat is already out of the bag," and Mr. Drew was in a position where he already knew that the police officers had already been in his home and seen the folder. The "cat out of the bag" theory, as applied to cases where law enforcement elicits an unlawful confession and then a subsequent confession under lawful circumstances, is directly analogous to the situation at bar.

> [A]fter an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat

---

game players and games; the contract and other papers related to the defendant's rental of a storage unit; and a cellular telephone, telephone charger, address/telephone book, and various identification and other cards belonging to the defendant." *See* Government's Opposition at 6.

2

>back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first.

*United States v. Hackley*, 636 F.2d 493, 502 (D.C. Cir. 1980) (citing *United States v. Bayer*, 331 U.S. 532 (1947)). *Cf. Missouri v. Seibert*, 542 U.S. 600, 613 (2004) ("Upon hearing warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent…").

In this case, the police officers had been inside Mr. Drew's apartment unlawfully immediately before returning with Mr. Drew and indicating to him that they had already found a folder containing certain photographs. After being coerced and in direct response to those utterings, Mr. Drew allegedly stated "this is what you are looking for" and allegedly offered his consent to the officers to search his home. This consent is not valid, and should be viewed as the fruit of the officers' first unlawful search. He was confronted with the officers' knowledge of what already existed in his apartment and was left in a position where he felt he had no choice but to consent to their search, as the fruits of the search had already been discovered. In other words, the cat was already out of the bag. For this reason, we respectfully submit that Mr. Drew's purported consent in this matter was invalid, as it was compelled by the officers' statements, and should not be considered as an intervening cure of the government's first tainted search. Thus, the tangible evidence, obtained by way of a subpoena following these unlawful searches, should be suppressed during the trial in this matter.

### III. THE GOVERNMENT CANNOT RELY ON THE INDEPENDENT SOURCE DOCTRINE TO CURE THE ILLEGALITY OF ITS INITIAL SEARCHES OF MR. DREW'S HOME.

The government's argument that its eventual recovery of physical evidence, which had been in Mr. Drew's home, was secured by lawful means (i.e. subpoena) and a source

3

independent from its initial unlawful searches must fail. By the time the government executed a search warrant in Mr. Drew's home, the police officers had already conducted two unlawful searches. Upon discovering that the items that they expected to recover, the items that they observed during their previous unlawful searches, were no longer in Mr. Drew's home, the government issued a subpoena to Mr. Drew's brother. These latter two consecutive actions by the government are clearly *dependent* on its initial unlawful searches of Mr. Drew's home.

"The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search (internal citation omitted) and of testimony concerning knowledge acquired during an unlawful search (internal citation omitted)." *Murray v. United States*, 487 U.S. 533, 536 (1988). Additionally, "the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes 'so attenuated as to dissipate the taint.'" *Id*. at 536-537. "The 'independent source' doctrine permits the introduction of evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from lawful activities untainted by the initial illegality." *Id.* at 533.

In *Murray*, federal law enforcement agents discovered barrels of marijuana inside a warehouse during an unlawful search, and then subsequently during a search pursuant to a warrant. *Id*. at 541. The issue before the Supreme Court was "whether the search pursuant to the warrant was in fact a genuinely independent source of the information and tangible evidence…" *Id*. at 542. The District Court and the First Circuit Court of Appeals found that the agents' application for a search warrant was independent from their observations during their initial unlawful search, and therefore the denial of the defendant's motion to suppress was proper.

4

However, the Supreme Court clearly stated that record did not justify such an inference – that the agents who made the unlawful entry into the warehouse "already planned to obtain that 'critical evidence' through a warrant-authorized search." *Id*. at 543. The Court, therefore, vacated the judgment and ordered that the case be remanded to the District Court to determine whether the subsequent warrant based search was an "independent source of the challenged evidence." *Id*. at 544.

In this case, nothing on the record indicates that the police officers' search of Mr. Drew's home pursuant to the search warrant was an independent source of the evidence at issue. That the officers' applied for and obtained a search warrant, came to an empty apartment and thereafter served a subpoena *duces tecum* on Mr. Drew's brother for certain items belonging to Mr. Drew, does not rectify their initial unlawful searches. In fact, the dissenting opinion in *Murray* outlines several significant criticisms of the majority's analysis that a follow up application for a search warrant may constitute a possible independent source for otherwise illegally obtained evidence:

> The strong Fourth Amendment interest in eliminating … incentives for illegal entry should cause this Court to scrutinize closely the application of the independent source exception to evidence obtained under the circumstances of the instant cases; respect for the constitutional guarantee requires a rule that does not undermine the deterrence function of the exclusionary rule. When, as here, the same team of investigators is involved in both the first and second search, there is a significant danger that the 'independence' of the source will in fact by illusory, and that the initial search will have affected the decision to obtain a warrant notwithstanding the officers' subsequent assertions to the contrary. It is therefore crucial that the factual premise of the exception – complete independence – be clearly established before the exception can justify admission of the evidence … To ensure that the source of the evidence is genuinely independent, the basis for a finding that a search was untainted by a prior illegal search must focus, as with the inevitable discovery doctrine, on 'demonstrated historical facts capable of ready verification or impeachment.'

*Murray*, 487 U.S. at 548-549 (Marshall, J., Stevens, J., O'Connor, J., dissenting).

Furthermore, the search warrant search is somewhat irrelevant for purposes of this analysis, because first, the officers did not recover any items during this search, and second, the apartment was allegedly empty so they made no visual observations of any physical evidence. Nevertheless, the application for the search warrant and the government's subsequent subpoena both came on the heels of their unlawful searches. Absolutely nothing on the record suggests that the unlawful searches in this case are "so attenuated as to dissipate the taint." *Id*. at 536-537.

## CONCLUSION

WHEREFORE, for the foregoing reasons and any reasons that appear to the Court during a hearing on this Motion, we respectfully request that the Court grant Mr. Drew's Motion and suppress all tangible evidence obtained unlawfully by the government.

Respectfully submitted,

**SCHERTLER & ONORATO, L.L.P.**

_____/s/_____
Danny Onorato (D.C. Bar No. 480043)
Michael Starr (D.C. Bar No. 461773)
601 Pennsylvania Avenue, NW
North Building, 9th Floor
Washington, D.C. 20004
202-628-4199 *telephone*
202-628-4177 *facsimile*

Counsel for Andre Drew

6

## **CERTIFICATE OF SERVICE**

      I hereby certify that copies were served electronically, on this 2nd day of May 2007, to the following:

Julieanne Himelstein
Denise A. Simmonds
Assistant United States Attorneys
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C. 20001
(202) 514-8203 (tel.)
(202) 305-8537 (fax)
julieanne.himelstein@usdoj.gov
denise.simmonds@usdoj.gov

                                                    _____/s/_____
                                                    Danny Onorato