UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 07-007 (GK) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRE DREW, | : | |
|    Defendant. | : | |

GOVERNMENT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR NEW TRIAL

     The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in opposition to the defendant's motion for new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. The defendant's motion should be denied because it is untimely and otherwise fails to state grounds for a new trial.

     **I.    Procedural Background**

     The defendant, Andre Drew, was indicted in January 2007, by a federal grand jury on four counts: Enticing a Minor to Engage in Sexual Conduct for the Purpose of Production, in violation of 18 U.S.C., Section 2251(a) (Count One); two counts of First Degree Child Sexual Abuse, in violation of 22 D.C. Code, Section 3008 (Counts Two and Three); and one count of Second Degree Child Sexual Abuse, in violation of 22 D.C. Code, Section 3009 (Count Four). Following a jury trial, the defendant was convicted of Counts One and Two. The jury was not able to reach a unanimous verdict on Counts Three and Four. On May 29, 2007, the defendant filed a motion seeking a new trial.

## II. Defendant's Motion is Untimely.

Rule 33 of the Federal Rules of Criminal Procedure provides that a motion for a new trial on grounds other than newly discovered evidence, "must" be filed within seven days after the verdict or finding of guilt, unless within that seven days the defendant seeks an extension of time in which to file such a motion. See Fed. R. Crim. P. 33(b)(2), 45(b) (West 2006). This seven day deadline is rigid and must be observed when the limitation is "properly invoked." See Eberhart v. United States, 546 U.S. 12, 126 S.Ct. 403 (2005) (*per curiam*). In Eberhart, the Supreme Court clarified its ruling in United States v. Robinson, 361 U.S. 220 (1960), that some procedural rules are not jurisdictional – depriving federal courts of the power to hear certain matters – but rather, they are claims-processing rules, whose time limits must be strictly enforced to provide some finality to pending matters. See Eberhart, 546 U.S. at \_\_\_\_, 126 S.Ct. at 406. Rule 33, the Court held, is a claims-processing rule whose time limitation is inflexible. As such, "[it] assure[s] relief to a party properly raising [it]." See id. at 407; see also United States v. Singletary, 471 F.3d 193, 195-97 (D.C. Cir. 2006) (applying reasoning of Eberhart and dismissing untimely filed appeal under Fed. R. App. P. 4(b)).

The defendant was convicted on May 15, 2007. According to the Certificate of Service, the defendant filed a motion on May 29, 2007, seeking a new trial on grounds other than newly discovered evidence. The defendant's motion is five days late. Under Rule 33, he was required to file his motion for a new trial – or a motion requesting an extension of time – no later than May 24, 2007. Thus, defendant's motion should be denied for failure to comply with Rule 33 and this Court need not consider the asserted substantive grounds for a new trial.

### III. The Motion For New Trial Should Be Denied Because It Lacks Merit.

#### A. A.B.'s Identity Is Not An Essential Element of Count Two.

The defendant first argues that he is entitled to a new trial because the government failed to prove the identity of A.B., specifically, his last name. See Def. Mot. at 2. He claims that the government's failure to prove A.B.'s last name constitutes a fatal variance from the indictment that warrants a new trial. He cites a century-old case, Williams v. United States. 3 App. D.C. 335, 1894 WL 11989 (App. D.C.), to support that proposition. Defendant's argument fails on three grounds: (1) A.B.'s identity was not an essential element of the offense of First Degree Child Sexual Abuse that the government had to prove beyond a reasonable doubt; (2) failure to prove A.B.'s last name does not constitute a variance from the indictment warranting a new trial; and (3) defendant has suffered no prejudice from the government's failure to prove A.B.'s last name.

In Count Two of the Indictment, the defendant was charged as follows:

> Between on or about October 1, 2005, and on or about December 9, 2005, the exact date being unknown to the Grand Jury, Andre Drew, being more than four years older than D.B., a child under 16 years of age, that is, 12 years of age, caused that child to engage in a sexual act, that is caused D.B. to place his mouth on the penis of A.B., a 13-year-old male. (**First Degree Child Sexual Abuse**, in violation of 22 D.C. Code, Section 3008 (2001 ed.).

Section 3008, of Title 22, of the District of Columbia Code, states that [w]hoever, being at least 4 years older than a child . . . causes *that child* to engage in a sexual act shall be imprisoned for any term of years or for life . . . ." See 22 D.C. Code, Section 3008 (2001 ed.) (emphasis added). First Degree Child Sexual Abuse requires the government to prove each of the following *three* elements beyond a reasonable doubt, that at the time of the offense: (1) D.B. was a child, that is under 16 years-of-age; (2) the defendant was more than four years older than

3

D.B.; and (3) the defendant caused D.B. to engage in a sexual act.  See Criminal Jury Instruction 4.62 (4th ed. 2007).

The defendant's motion mistakenly asserts that A.B. is a "complaining witness" whose identity the government was required to prove.  See Def. Mot. at 2.  A.B. was not a complaining witness for any count in the indictment and the government made no claim on his behalf.  D.B. is the complaining witness, or *that child*, in Count Two and the person whom the defendant is alleged to have abused.  D.B.'s identity, causation and the sexual act are the elements of the offense that the government was required to prove.  It was not required to prove the identity of the recipient of the sexual act.  A.B. was listed in the indictment simply to describe the sexual act in which the government alleged the defendant caused D.B. to engage, thus providing the defendant with sufficient notice on which to base a defense.  The Federal Rules of Criminal Procedure contemplate that an indictment *may* allege the means by which a defendant committed an offense.  See Fed. R. Crim. P. 7© (West 2006) (emphasis added).  Merely naming the person on whom the defendant caused D.B. to perform the sexual act, did not transform that person's identity into an essential fourth element that the government had to prove beyond a reasonable doubt.  Indeed, Rule 7 recognizes that indictments may include surplusage, or language not essential to the offense.  See Fed. R. Crim. P. 7(d) (West 2006).  The plain language of the statute, the jury instruction and Rule 7, thus refute defendant's contention that proof of A.B.'s last name is a "requirement of law."  See Def. Mot. at 3.

The defendant argues, nonetheless, that failure to prove A.B.'s last name constitutes a fatal variance from the indictment requiring a new trial.  He relies solely on Williams to support that contention.  A "variance" from an indictment occurs when the facts proven at trial *materially differ* from the facts contained in the indictment, but the essential elements of the

4

offense are the same.  See, e.g., Ingram v. United States, 592 A.2d 992, 1005 (D.C.), cert. denied, 502 U.S. 1017 (1991) (emphasis added).  Here, there was no material discrepancy between the facts introduced at trial and those alleged contained in the indictment.  The indictment charged the defendant with causing D.B. to commit a sexual act, namely placing his mouth on the penis of another child, A.B.  The evidence concerning Count Two consisted of D.B.'s testimony that the defendant offered him $500 to engage in sexual acts with "Angel" while the defendant took pictures.  The photographs of those sexual acts involving D.B. and "Angel" were admitted into evidence, including a photograph of D.B. with his mouth on "Angels" penis.  D.B. identified himself and "Angel" in each photograph.  The government's proof, therefore, was consistent with - and did not *materially differ* from - the allegations set forth in the indictment.

     Williams, that the defendant cites, supports the government's contention that A.B.'s name is not material.  In that case, the defendant claimed that he was charged in an indictment with larceny for taking from "Delia," property that belonged to Delia's mother.  At trial, the evidence showed that the child's name was really "Dellie."  The defendant appealed his conviction arguing that there was a fatal variance between the trial proof and the indictment concerning the identity of the victim of the larceny.  See, Williams, 3 App.D.C. at ___, 1894 WL 11989 at *1-5.  The Court rejected that argument and held that it is the person against whom the offense is committed that is "material and substantial."  Id. at *7.  The Court remarked that it was the mother's property that had been taken and that she had suffered the crime of larceny.  The daughter's identity was not material.  Rather it was alleged only to show that the property had been taken from someone as the statute required.  Id.  Likewise, in this case the government alleged and proved that the defendant sexually abused D.B.  He suffered the crime of First

Degree Child Sexual Abuse, and it is his identity that is material to proving that offense, and not that of A.B. So, whether the government proved A.B.'s name - in whole or in part - is not relevant to its ability to prove the charged offense. Williams thus supports the government's position that there was no variance, let alone a material one, between the indictment and the proof at trial.

But even if the defendant could establish a material variance between the indictment and the proof at trial, he still would not be entitled to a new trial. Rule 52(a) of the Federal Rules of Criminal Procedure states that a variance, which does not substantially affect the defendant's rights, should be dismissed as a harmless error. See Fed. R. Crim. P. 52(a) (West 2006); United States v. Simmons, 431 F.Supp.2d 38, 60 (D.D.C. 2006). Indeed, to prevail on such a claim, the defendant must show that he was deprived of adequate notice of the charges against him such that he was not able to mount a defense, was unfairly surprised, or is at risk for another prosecution contrary to his double jeopardy rights. See Simmons, 431 F.Supp.2d at 60.

The defendant has made no claim of prejudice, nor could he. The government disclosed A.B.'s full name and identifying information to defendant's counsel (who preceded trial counsel) on at least three occasions. On March 1, 2006 the government made a written Brady disclosure concerning A.B. On July 12, 2006, the government disclosed A.B.'s full name and address. On August 21, 2006, the government made additional disclosures regarding A.B. and corrected the spelling of his first name. These specific disclosures concerning A.B. were made in addition to the government producing to defendant's counsel (who was not trial counsel), voluminous quantities of documents concerning the case that also referenced A.B. Based on the government's disclosures concerning A.B., defendant's counsel (who was not trial counsel) attempted to subpoena from the District of Columbia Public School System, records concerning

A.B. Moreover, the evidence at trial demonstrated that the defendant had known D.B. and A.B. for some time and in rather close or intimate circumstances. Pictures depicting A.B. engaged in sexual acts with D.B. in the defendant's room at 135 P Street, N.W., were admitted into evidence. The sexual act that formed the basis for Count Two was depicted in some of those photographs.

On this record, the defendant is hard pressed to claim that he did not know the identity of A.B. insofar as that information was relevant to his preparing a defense against claims that he sexually abused D.B., or that he was unfairly surprised about the identity of A.B. Additionally, the government's failure to prove A.B.'s last name has not placed the defendant at risk for a subsequent prosecution for the same offense. D.B. identified A.B. by his first name numerous times at trial. D.B. also specifically identified in each photograph that was admitted into evidence which boy was whom, including the photograph depicting D.B. with his mouth on Angel's penis that reflects the sexual act that is the basis for Count Two. Given the details and the photographs in the record, there is virtually no chance that the defendant would be prosecuted again for this particular crime and his motion for a new trial on these grounds should fail.

### IV.     **The Government Did Not Lose Exculpatory Evidence**.

The defendant's final argument for a new trial is essentially a missing evidence claim. He contends that the government lost photographs and negatives that, if available, would have been exculpatory. The Court should reject this claim because it lacks a factual and legal foundation.

The government admitted into evidence, ten (10) photographs showing D.B. involved in sexual acts with "Angel." A single strip of negatives, containing images that were a subset of

the photographs, also was admitted into evidence. The defendant asserts that there originally were twenty-six (26) photographs on the camera and more negatives. He contends that the government lost sixteen (16) of the photographs and some of the negatives. See Def. Mot. at 3. There was no evidence presented at trial, however, to substantiate that the government ever had more photographs or additional negatives. The evidence actually was to the contrary. Ms. Blackwell, the CVS photo technician who received the disposable camera from the defendant and developed its contents, testified at trial. She stated that the ten photographs that were admitted into evidence were the photographs that she developed from the defendant's camera; no more, no less. She also testified that some of the defendant's negatives had been destroyed by the processing machine and she explained how that occurred. Her supervisor, Mr. Oni, also testified that the pictures and the negative that were admitted into evidence were the only items that he received from Ms. Blackwell, that he gave those items to his supervisor, and he was present when the items were given to the police. In a failed attempt to establish that there once had been more pictures, counsel for the defendant attempted to discredit Mr. Oni on cross-examination by using his grand jury testimony to suggest that there had been at least *eleven* photographs at one time. On redirect, however, Mr. Oni reviewed the grand jury exhibits and he testified that the phantom eleventh picture had actually just been a duplicate of one of the ten. Accordingly, when the government rested its case-in-chief there was no evidence that more than ten pictures and a single negative strip ever existed and there was no evidence that the government ever had been given additional photographs or negatives. The defendant then elected to put on an affirmative case. He did not, however, call any witnesses or present any evidence to suggest that there ever had been an additional sixteen pictures or more than one negative strip. The defendant's claim that these items existed and were lost should be rejected as

shear conjecture as his claim lacks any support in the factual record. See, e.g., Simmons, 431 F.Supp.2d at 62 (denying motion to vacate conviction for possession of a firearm where there was no evidence that government destroyed gun).

Additionally, the defendant's contention that the alleged missing photographs and negative strips were exculpatory is pure speculation and in stark contrast to the government's evidence. One of the defendant's theories at trial was that he did not take the sexually explicit pictures of D.B. He claimed that D.B. was framing him because D.B. knew that the defendant was unusually susceptible to a child sexual abuse allegation because of the defendant's prior conviction. The defendant's theory was that D.B., A.B., and another person gained access to his room without his knowledge and they took the sexually explicit photographs. The defendant claimed that the photographer's identity would have been revealed in the missing photos. The government's uncontradicted evidence refuted that claim. D.B. testified that the defendant took the sexually explicit pictures of him and "Angel" after offering to pay each of them $500 if they agreed to pose. The photographs, according to D.B., were taken in the defendant's room at 135 P Street, N.W., in the District of Columbia, a place where D.B. had been on many occasions. D.B. testified that there were only three people in the room when the photographs were taken, D.B., "Angel" and the defendant. The defendant, he said, directed the particular poses reflected in the photographs. Even when defense counsel attempted to suggest during cross-examination of D.B., that someone other than the defendant took the pictures, D.B. remained steadfast in his testimony that the defendant took them.

D.B.'s testimony was not the only evidence that the government proffered in support of its claim that the defendant took the sexually explicit photographs of D.B. To bolster D.B.'s testimony, the government admitted into evidence two tapes from surveillance cameras located

at the CVS drugstore where Ms. Blackwell and Mr. Oni worked. These tapes showed the defendant dropping off a disposable camera for processing with Ms. Blackwell and then attempting to collect the photos one hour later from Mr. Oni. Ms. Blackwell testified that the sexually explicit photographs that she developed and that were admitted into evidence, came from the camera that the defendant is shown dropping off in the surveillance tape. Mr. Oni similarly stated that the surveillance tape showed the defendant attempting to collect the sexually explicit photographs that had been admitted into evidence. Because the tapes contain visual depictions without sound, Mr. Oni testified that the defendant gave him a variety of explanations for his desire to collect the pictures, none of which included that he had not taken them. And, Mr. Oni testified that the defendant became agitated when Mr. Oni refused to return the photographs due to their explicit nature. The defendant left the store only after Mr. Oni offered to call the police to sort through whether the pictures could be given to the defendant.

On this record, there was ample evidence from which the jury could infer beyond a reasonable doubt that the defendant took the photographs of D.B. There was no evidence whatsoever that anyone else had taken those pictures and there was certainly no evidence that the alleged *real* photographer's image had been captured on the camera and then lost to the defendant's detriment. To conclude that such evidence existed and that it was exculpatory would require the Court to engage in improper speculation. See, e.g., Simmons, 431 F.Supp.2d at 62 (rejecting motion to vacate firearm's conviction on theory that government allegedly destroyed gun that would have been exculpatory).

In sum, and for all of the reasons set forth above, the government respectfully requests that the defendant's motion for a new trial be denied without a hearing.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

_____
JULIEANNE HIMELSTEIN
ASSISTANT U.S. ATTORNEY
Federal Major Crimes Section
555 4th Street, NW
Washington, DC 20001
(202) 514-8203

_____
DENISE SIMMONDS
ASSISTANT U.S. ATTORNEY
Sex Offense/ Domestic Violence Section
555 4th Street, NW
Washington, DC 20001
(202) 353-8077