UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : Criminal Case No. 07-007 (GK) |
| | : |
| ANDRE DREW, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

Defendant has filed a Motion, Pursuant to 20 U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence [Dkt. No. 82]. Upon consideration of the Motion, the Government's Opposition [Dkt. No. 85], Defendant's Reply [Dkt. No. 87], and the entire record in this case, the Court concludes, for the following reasons, that the Motion will be **denied**.

### I.   PROCEDURAL BACKGROUND

On February 22, 2006, Defendant was indicted in the Superior Court for the District of Columbia in Case No. 2005-FEL-7174 on multiple counts of child sexual abuse and using a minor in a sexual performance. Defendant was represented in that case by Brandi Harden, Esq. On December 1, 2006, Ms. Harden filed a Motion to Withdraw citing irreconcilable differences with Defendant, and on December 7, 2006, the Superior Court granted her Motion. On January 22, 2007, Defendant filed a *pro se* Motion to Dismiss, alleging that Ms. Harden's representation had been ineffective and, therefore, the case should be dismissed.

On January 31, 2007, a Federal Grand Jury charged Defendant by indictment with one count of Enticing a Minor in Sexual Conduct for the Purpose of Production (18 U.S.C. § 2251(a)) (Count 1); two counts of First Degree Child Sexual Abuse (D.C. Code § 22-3008) (Counts 2 and 3); and one count of Second Degree Child Sexual Abuse (D.C. Code § 22-3009) (Count 4). On January 31,

2007, the Superior Court dismissed without prejudice the case against Defendant on the understanding that he had been indicted in this Court.

Two experienced criminal defense lawyers were appointed to represent Defendant in the criminal proceedings in this case. Counsel filed multiple pre-trial Motions on Defendant's behalf including a Motion to Suppress Evidence and Statements. At a Motions Hearing on May 1, 2007, the United States agreed that it would not use Defendant's statements in its case-in-chief. 5/1/07 Tr. 43. The Government also agreed that the search of Defendant's apartment had been illegal, that it would not use in its case-in-chief the pornographic photos of D.B. and A.B. that were recovered during that search, and that it would not use the evidence recovered on the same day from Defendant's car. Id. at 51. However, the Government did not concede that the evidence that was produced by Defendant's brother pursuant to a subpoena duces tecum was improperly obtained. Id. at 53-57. At a pre-trial hearing a few days later, the Court agreed with the Government's position. 5/7/07 Tr. 35. Therefore, Defendant's Motion to Suppress Evidence and Statements was denied in part as moot and denied in part on the merits.

On May 8, 2007, Defendant's jury trial began. It concluded on May 15, 2007, when the jury found Defendant guilty on Count 1 (Enticing a Minor in Sexual Conduct for the Purpose of Production) and Count 2 (First Degree Child Sexual Abuse). The jury deadlocked on Count 3 (First Degree Child Sexual Abuse) and Count 4 (Second Degree Child Sexual Abuse) and the Court declared a mistrial on these counts.

On September 16, 2007, the Court sentenced Defendant to 327 months of imprisonment on Count 1 and to a consecutive term of 216 months of imprisonment on Count 2. Thereafter, Defendant noted an appeal asserting error by the Court, Government misconduct, and ineffective

assistance of trial counsel. On May 19, 2011, the United States Court of Appeals for the District of Columbia Circuit rejected all of Defendant's claims and affirmed his convictions. United States v. Drew, 422 F. App'x 1 (D.C. Cir. 2011). Defendant's Petition for a Writ of Certiorari was denied on October 1, 2012. Drew v. United States, 133 S.Ct. 369 (2012).

On August 27, 2012, Defendant filed the present, timely, Section 2255 Motion.

## II.   APPLICABLE LEGAL PRINCIPLES

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that it was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . ." 28 U.S.C. § 2255. "It is settled that a § 2255 motion is not meant to be a substitute for a direct appeal and that 'it does not encompass all claimed errors in conviction and sentencing.'" United States v. Pollard, 959 F.2d 1011, 1028 (D.C. Cir.), (quoting United States v. Addonizio, 442 U.S. 179, 184-85 (1979)), cert. denied, 506 U.S. 915 (1992).

In particular, relief on collateral attack is available only where there has been an error that is jurisdictional or constitutional or there is "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962). Accordingly, "in a § 2255 collateral challenge, in order to gain relief under any claim, [a defendant] is obliged to show a good deal more than would be sufficient on direct appeal from his sentence." Pollard, 959 F.2d at 1020 (emphasis in original).

Finally, claims which have been previously raised and rejected on direct appeal will not normally be entertained in a Section 2255 Motion. Reed v. Farley, 512 U.S. 339, 358 (1994); United States v. Jackson, No. 98-3010, 1998 WL 389111, at *1 (D.C. Cir. June 26, 1998).

### III.  DEFENDANT'S SECTION 2255 CLAIMS

#### A. Several of Defendant's Claims Must Be Denied Because They Were Rejected By Our Court of Appeals on Direct Appeal

Specifically, three of Defendant's ineffective assistance of counsel claims (claims relating to counsel's purported failure to assert a Fourth Amendment challenge, and a claim relating to counsel's purported failure to call Detective Palchak and A.B. to testify) and Defendant's claim of Court error (relating to the Court's refusal to allow the defense to call Detective Palchak to testify about A.B.'s statements) were raised and rejected on direct appeal. Because Defendant has not pointed to any change in the law since his direct appeal that would allow him to re-visit these claims on collateral attack, the claims must be summarily denied. See United States v. Greene, 834 F.2d 1067, 1070 (D.C. Cir. 1987), cert. denied, 487 U.S. 1238 (1988) ("[A] federal prisoner cannot raise collaterally any issue litigated and adjudicated on direct appeal from his conviction, absent an intervening change in the law.").

#### B. Defendant Has Failed to Show Any Prejudice Resulting From His Claims of Ineffective Assistance of Counsel

##### 1. Failure to Show Prejudice

As is well known, Strickland v. Washington, 466 U.S. 668, 687 (1984), set forth the requirements for prevailing on ineffective assistance of counsel claims. First, Defendant must prove that counsel's performance was deficient; and second, that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

Id. at 687. In particular, the Defendant must prove that counsel's deficient performance "prejudiced the defense." Id. The Court must view counsel's performance from a highly deferential viewpoint and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

In order to establish prejudice, a defendant must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The Defendant cannot make such a showing in this case.

The Government's evidence was extremely compelling. The minor child, D.B., was 13 years old when he testified. He first met Defendant when he was only eight years old. D.B. testified at length as to how the Defendant developed a relationship with him by taking him to a local go-kart track, playing video games with him in the bedroom of Defendant's home, playing strip poker with other friends of D.B. at the Defendant's home, and drinking vodka and smoking marijuana with the Defendant in his bedroom.

After losing track of each other, D.B. met the Defendant again when he was 12 years old and their "friendship" resumed. The Defendant allowed D.B. to drive his car, bought him gifts, gave him a cellphone, and gave him $100 towards the purchase of a dirt bike, which was then kept at Defendant's home. D.B. testified that during this time, he had sex with the Defendant who sometimes gave him money after doing so. He testified that he and the Defendant engaged in oral sex. Although the sex acts generally occurred in Defendant's bedroom, D.B. testified that he and the Defendant once had sex in an alley near the Anacostia Metro Station. In total, D.B. estimated that he and the Defendant had sex 15-20 times.

On one occasion, Defendant offered D.B. and his 13 year old friend, A.B., $500 to pose for photographs. The Defendant then went to Rite Aid and purchased a disposable camera and returned to his bedroom with the camera. Defendant directed the boys to remove all their clothing and told them how they should pose. These poses included oral sex and intercourse between the two boys. Several of these photographs were introduced into evidence as Government Exhibits 2-11.

Ultimately, Defendant went to a CVS Store located at 660 Rhode Island Avenue, N.E., and requested a one-hour development of the pictures on the disposable camera. At least two CVS employees looked at the photographs after they were developed and refused to give them to the Defendant when he returned to claim them. The Government introduced a videotape showing Defendant dropping off the camera and returning to collect the photographs.

The Government also introduced the envelope that Defendant completed at the time he dropped off the camera. The supervisor who refused to return the photographs to the Defendant later notified the Metropolitan Police Department ("MPD") that someone had submitted graphic photographs for development and turned over the photographs, negatives, envelope, and surveillance videotape to officers of the MPD.

Over objection, the Government was allowed to introduce evidence, and the parties stipulated, that Defendant was convicted in 1984 in the Superior Court of the District of Columbia of sodomy on a 17-year old male.

Based upon the strength of the Government's evidence, in particular the photographs of the two boys introduced as exhibits and the credibility of D.B., the Court concludes that none of the alleged errors of trial counsel, even if proven, could establish "a fundamental defect which inherently

results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill, 368 U.S. at 428.

### 2.    Failure to Show "Deficient Performance"

Initially, it should be noted that three of the Defendant's ineffective assistance of counsel claims were raised and rejected on his direct appeal to the Court of Appeals. There has been no change in the law since the issuance of the Court of Appeals opinion denying the direct appeal and, therefore, the claims are to be summarily rejected.[1]  Greene, 834 at 1071.

Finally, the remainder of Defendant's ineffective assistance of counsel claims must be denied because they are extremely vague and/or lack merit.

For example, Defendant argues that his counsel failed to "investigate case law." However, he fails to cite a single case that his counsel should have discovered, or presented, or that would have made a different verdict reasonably probable. Defendant also argues that counsel should have "effectively" presented "the issue of transfer" of his Superior Court case to the District Court. He does not identify what that "issue" was, and certainly has not shown the relevance of the Superior Court proceedings, which were dismissed, to this case. Defendant makes the very serious charge that his counsel "lied" during his opening statement. He offers no evidence to sustain or support such an accusation. Finally, Defendant argues that counsel was ineffective for "failing" to "place" him on the stand -- presumably to testify. The record shows that in response to the Court's inquiries during trial as to whether he wished to testify, Defendant made it clear that he did not wish to; nor

---

[1] Defendant inaccurately makes certain factual assertions about counsel's failure to take certain actions. However, the record is clear that counsel did seek to suppress the evidence seized from Defendant's home, car, and brother. The record also reflects that counsel sought to have the Detective testify about A.B.'s statements, but was not permitted to do so because the Court sustained the Government's objection to such testimony.

does he submit any statement or affidavit setting forth what his testimony would have been; nor does he realize that if he had testified, he would have been confronted on cross-examination with the damning statements that were contained in the videotape statement he gave to the police on the day of his arrest.

### C.  Defendant's Remaining Claims Lack Merit

Defendant argues that the search of his home violated the Fourth Amendment; that the Government failed to establish that the pornographic photographs he took of the two young boys were transported in interstate commerce; and that this Court lacked jurisdiction over Count 2 of the Indictment because it is a D.C. Code offense. Defendant failed to raise any of these claims in his direct appeal and, therefore, they are, at this time, procedurally barred. United States v. Frady, 456 U.S. 152, 164 (1982) ("[O]nce the defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a fair opportunity to present his federal claims to a federal forum.").

The only one of these claims that needs to be addressed is the Defendant's argument that the Government failed to establish that the photographs Defendant took were transferred in interstate commerce or that he intended for the photographs to be transferred in interstate commerce. Under the relevant statute, 18 U.S.C. § 2251(a), the necessary interstate commerce element may be satisfied by a showing that "the visual depiction was produced using materials that have been mailed, shipped, or transported in interstate commerce." United States v. Griffith, 284 F.3d 338, 346-47 (2d Cir.), cert. denied, 537 U.S. 986 (2002). The Government satisfied this essential element of the offense by presenting evidence that the film in the camera that Defendant used to photograph the two young

boys was made in Japan and shipped to the United States in interstate commerce. Therefore, there is no question that the statutory requirement was met.

Defendant also argues that the Court lacked jurisdiction over Count 2 because it was a D.C. Code offense. That is simply not the law. D.C. Code 11-502(3) "empowers the U.S. District Court for the District of Columbia to try a local criminal offense if the offense 'is joined in the same information or indictment with any Federal offense.'" United States v. Kember, 648 F.2d 1354, 1359 (D.C. Cir. 1980).

For all the reasons stated, the Court concludes that Defendant's Motion **must be denied**.

April 4, 2013

/s/ Gladys Kessler
Gladys Kessler
United States District Judge

**Copies via ECF to all counsel of record**